# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-8688-GW(JEMx) | Date | April 22, 2013 |
| Title | *Goodness Films, LLC, et al. v. TV One, LLC, et al.* | | |

Present: The Honorable    GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Anne Kielwasser | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| James M. Fazos | James T. Ryan |
| Rebecca L. Worden | Michael O. Azat |

**PROCEEDINGS:**    **DEFENDANT EDWIN B. WEINBERGER'S MOTION TO DISMISS THIRD AMENDED COMPLAINT (filed 03/25/13)**

**DEFENDANT MIGUEL A. NUNEZ'S MOTION TO DISMISS THIRD AMENDED COMPLAINT (filed 03/25/13)**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. Based on the Tentative and for reasons stated on the record, the above-entitled motions are GRANTED IN PART AND DENIED IN PART. The Court would deny Defendants' motion to dismiss the breach of fiduciary duty claim and aiding and abetting breach of fiduciary duty claim with respect to Plaintiffs Herbert Hudson, Paul Goldsby and Kenny Goldsby. Plaintiffs will have two weeks from the date of this order to **manually** file a Fourth Amended Complaint.

              :    06

Initials of Preparer    JG

***Goodness Films, LLC, et al. v. TV One, LLC, et al.***, Case No. CV-12-8688-GW(JEMx)
Tentative ruling on Defendants Edwin B. Weinberger and Miguel A. Nunez's Motions to
Dismiss

## I. Background

Goodness Films, LLC ("Goodness Films") and individuals Herbert Hudson ("Hudson"),
Paul Goldsby, and Kennedy Goldsby (collectively "Plaintiffs") filed suit on October 10, 2012
against TV One, LLC ("TV One") and individuals Miguel A. Nunez, Jr. ("Nunez"), and Edwin
B. Weinberger ("Weinberger"), asserting a copyright infringement claim and eight state law
claims. Docket No. 1. Plaintiffs filed their Second Amended Complaint ("SAC") on January 22,
2013. Docket No. 70. On February 28, 2013, the Court granted in part and denied in part a
motion to dismiss the SAC, permitting Plaintiffs to proceed with their claims for breach of
implied in fact contract and interference with prospective business advantage. *See generally*
Docket No. 78. The Court dismissed Plaintiffs' claims for direct copyright infringement, unfair
competition, and breach of fiduciary duty and aiding and abetting breach of fiduciary duty, but
granted Plaintiffs leave to amend. *Id.* Plaintiffs filed their Third Amended Complaint ("TAC")
on March 11, 2013. *See* TAC, Docket No. 79. On March 25, 2013, Defendants Weinberger and
Nunez (collectively, "Defendants") filed the instant motions to dismiss the TAC's fourth and
fifth claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty.[1] *See*
*generally* Def. Mot., Docket No. 82.

While the facts of this dispute have already been discussed at length by the Court and
need not be repeated in their entirety here (*see* Docket Nos. 67, 78), the Court will briefly
summarize the allegations in the TAC insofar as they relate to Plaintiffs' breach of fiduciary duty
claims.

Plaintiff Hudson founded the "iconic Southern California-based soul food restaurant"
Roscoe's Chicken and Waffles in 1975. TAC ¶ 13. Eventually, Plaintiffs Hudson, Paul
Goldsby, and Kennedy Goldsby ("Roscoe's Producers") allegedly came up with the idea to
develop a television series ("Roscoe's Show") based on the Roscoe's restaurant, "its memorable
employees," and "the interactions among the unique people who work and dine there." *Id.* ¶ 21.

In or around 2005, the Roscoe's Producers allegedly approached Defendant Nunez, an
actor and occasional executive producer, to explain the idea for the TV series and their goals for
the project. *Id.* ¶¶ 9, 26. The Roscoe's Producers were aware that Defendant Nunez had
"substantial existing relationships with showrunners, writers, actors, networks and/or members of
the entertainment industry who might make valuable contributions to the Roscoe's Show." *Id.*
Therefore, Roscoe's Producers allegedly "asked Nunez and Nunez agreed to act as the Roscoe's
Producers' agent in connection with (a) presenting the concept of the Roscoe's Show to third
persons and entities, (b) presenting certain written materials which might be drafted in
connection with the Roscoe's Show to third persons and entities, and (c) once the series was
sufficiently developed, ultimately 'pitching' the Roscoe's Show to appropriate television
networks[.]" *Id.* The Roscoe's Producers also told Nunez that "if he was successful in bringing

---

[1] Defendant Nunez joined in the filing of Defendant Weinberger's motion. *See* Docket No. 83.

appropriate showrunners, writers, actors, networks and/or others to the project, he would be considered eligible to act as a co-executive producer on the Roscoe's Show." *Id.* ¶ 26. Additionally, "the Roscoe's Producers also determined that Defendant Nunez would be a perfect fit for a particular acting role on the Roscoe's Show." *Id.* Later in 2005, Defendant Nunez allegedly introduced the Roscoe's Producers to Defendant Weinberger as a potential "script polisher" and "series writer" for the potential show. *Id.* ¶ 27. Plaintiffs allege that Nunez contacted Weinberger "in his capacity as agent on behalf of the Roscoe's Producers" and that "Weinberger was aware at that time, or became aware thereafter, that Nunez was acting as agent on behalf of the Roscoe's Producers in his efforts in connection with Roscoe's Show." *Id.* Plaintiffs allege that they continued to work to develop the show over the next several years. *See id.* ¶¶ 29-48. During that period, "Defendant Nunez remained actively involved, ostensibly as an 'insider' in the Roscoe's Show" including "sitting in on casting panels at casting sessions, attending multiple meetings related to development, and continuing to introduce potential writers, actors, and other members of the television entertainment industry to the project." *Id.* ¶ 45. Nunez also worked with Plaintiffs "on various other projects offered to him by these individuals and entities" and "received regular financial compensation for his work on these projects and other ventures." *Id.*

In or about 2011, six years after Nunez's alleged initial agreement to serve as Plaintiffs' agent in advancing Roscoe's Show, Plaintiffs and Nunez "agreed that Nunez – who held himself out as having prior established relationships with various television networks, including [Defendant] TV One – would present the Roscoe's Show Materials and concept in an attempt to get TV One to contribute financially to the final stages of production and/or enter a license agreement to broadcast the Roscoe's Show on the TV One network." *Id.* ¶ 49. The TAC alleges that Nunez was tasked with "convey[ing] specific aspects of the Roscoe's Show to TV One as appropriate," including the setting and comedic format of the program, the show's characters, and the actors selected for various roles in the show. *Id.* For this "pitch" of Roscoe's Show to Defendant TV One, Nunez was allegedly authorized "to act on behalf of Plaintiffs in conveying and initiating the relationship between Plaintiffs and TV One, and that he would be subject to the further control of Plaintiffs in carrying out this duty." *Id.* The TAC states that Nunez "was to report back to Plaintiffs" once he had presented the concept to TV One. *Id.*

However, instead of pitching Roscoe's Show to TV One, Plaintiffs allege that Defendants Nunez and Weinberger decided that Nunez would pitch "Belle's Show" – a misappropriated version of Plaintiffs' program – in an effort to secure "the development, production, and airing" of Belle's Show on TV One. *Id.* ¶ 54. Accordingly, "in or around late 2011, Defendants Nunez and Weinberger attended a meeting with Toni Judkins, executive vice president for original programming at TV One," in which Nunez allegedly pitched Belle's Show to TV One and did not present Plaintiffs' show materials or concept. *Id.* Thereafter, Nunez allegedly entered "into an agreement with TV One, along with Defendant Weinberger, to develop, produce, and broadcast the infringing Belle's Show." *Id.* ¶ 98.

By "[s]tealing Plaintiffs' original ideas and concepts, including [Roscoe's Show]," as well as failing to pitch Roscoe's Show to TV One "and instead 'pitching the Belle's Show," the TAC alleges that Defendant Nunez "breached the fiduciary duties that he owed to Plaintiffs and willingly undertook[.]" *Id.* Defendant Weinberger allegedly "aided and abetted Nunez's breach"

-2-

by knowingly inducing and providing substantial assistance to Defendant Nunez "in his violation of his respective fiduciary duties to Plaintiffs." *Id.* ¶¶ 104-105. Furthermore, Plaintiffs allege that Defendant Weinberger caused the breach of Nunez's fiduciary duties "by conspiring with Nunez to imitate, adopt, plagiarize, pirate, and misappropriate the Roscoe's Show script . . . taking its unique characters, theme and plot for themselves and presenting the same to Defendant TV One[.]" *Id.* ¶ 105.

## II. **Legal Standards**

Plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim upon which relief can be granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."). A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See Twombly*, 550 U.S. at 558-59; *see also William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

In deciding a 12(b)(6) motion, the court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and other extrinsic documents when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

## III. **Analysis**

Plaintiffs argue that they have sufficiently alleged the existence of a fiduciary relationship by pleading that Defendant Nunez agreed to act as Plaintiffs' agent in connection with the development and promotion of Roscoe's Show. Pl. Opp. at 9, 20. Defendants respond that no agency relationship existed because Defendant Nunez did not have the power to "alter the legal relations" between Plaintiffs and TV One, and that Defendant Nunez "never actually represented Plaintiffs in connection with dealings with TV One." *See, e.g.,* Def. Reply, Docket No. 82, at 4, 6. Finally, Defendants argue that because Nunez is alleged to have entered into an agreement to pitch a show owned "by just Goodness Films," the TAC does not sufficiently allege that Nunez owed "a fiduciary duty to all four Plaintiffs." *See* Def. Mot. at 9.

"[B]efore a person can be charged with a fiduciary obligation, he must either [1]

-3-

knowingly undertake to act on behalf and for the benefit of another, or [2] must enter into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat. Medical Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 387 (2008) (quoting *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 221 (1983)). Examples of relationships that impose fiduciary obligations "as a matter of law" include "a joint venture, partnership or agency." *City of Hope*, 43 Cal. 4th at 387. Here, Plaintiffs argue that Defendant Nunez's fiduciary obligations arose as the result of his agreement to serve as their agent in dealing with TV One. Pl. Opp. at 13, 20.[2] "An agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship." Rest. 3d, Agency § 8.01 (2006).

While "there is no bright-line" test used in determining agency, California courts have considered the following in deciding whether an agency relationship exists: (1) whether the agent has power to alter the legal relationships of the principal; (2) whether the agent acts as the fiduciary of the principal; (3) whether the principal can control the agent; and (4) whether the agent consents to act as the principal's agent. *See Borders Online, LLC v. State Bd. of Equalization*, 129 Cal. App. 4th 1179, 1190-91 (2005) (discussing general use of the four preceding factors but noting the absence of a "bright-line" and indicating that trial courts are not required to apply each factor); *see also Van't Rood v. County of Santa Clara*, 113 Cal. App. 4th 549, 571 (2003) ("Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control.") (citations omitted). Needless to say, the analysis is context-specific.[3]

"Normally, agency is created by an express contract or authorization." 3 Witkin, Summary of Cal. Law: Agency & Employment (10th ed. 2005) § 92, p. 139. The agreement may be oral, except where the agency is to enter into a contract required by law to be in writing, in which case the authorization must be in writing under the "equal dignities" rule. *Id.* The

---

[2] The parties' briefing focuses on a number of cases relating to the existence of fiduciary duties *outside* the context of agency. *See, e.g., Committee on Children's Television*, 35 Cal. 3d at 222 (buyer and seller not ordinarily in fiduciary relationship); *City of Hope*, 43 Cal. 4th at 380 (no fiduciary relationship where plaintiff, in return for royalties, entrusted a secret scientific discovery to Genentech to develop, patent, and commercially exploit); *Wolf v. Superior Court*, 106 Cal. App. 4th 625, 30 (2003) ("Wolf concedes the complaint is devoid of allegations showing an agency, trust, joint venture, partnership or other 'traditionally recognized' fiduciary relationship and further admits that the complaint cannot be amended to state facts alleging such a relationship."). These cases do not, however, resolve the separate question of whether there was an *agency* relationship between Defendant Nunez and Plaintiffs (which, in turn, could give rise to an *agent's* fiduciary obligations). Given that the TAC alleges the existence of an agency relationship – and the breach of fiduciary duty claims are premised upon a purported agency relationship – the key issue for the purposes of resolving this motion to dismiss is whether Defendant Nunez acted as an "agent" for Plaintiffs.

[3] *See also, e.g., Michelson v. Hamada* 29 Cal. App. 4th 1566, 1580 (1994) (written agreements regarding billing and collection services created agency relationship between two doctors); *Violette v. Shoup*, 16 Cal. App. 4th 611, 620 (1993) (no agency relationship created between social acquaintances merely because one made suggestion to another); *St. Paul Ins. Co. v. Industrial Underwriters Ins. Co.* 214 Cal. App. 3d 117, 123 (1994) (no agency relationship created when driver took car for a test drive); *Alvarez v. Felker Mfg. Co.*, 230 Cal. App. 2d 987, 999–1000 (1964) (relationship at issue was that of buyer-seller).

contract "may also be implied from the circumstances and conduct of the parties." *Id; see also Borders Online,* 129 Cal. App. 4th at 1189 ("An agency relationship 'may be implied based on conduct and circumstances.'") (citation omitted). "The existence of agency or employment is mainly a question of fact." 3 Witkin, Summary of Cal. Law: Agency & Employment, § 93, p. 140; *see also ING Bank, FSB v. Chang Seob Ahn,* 758 F. Supp. 2d 936, 941 (N.D. Cal. 2010) ("Agency is typically a question of fact[.]"); *Van't Rood,* 113 Cal. App. 4th at 562 (2003) (same); *Borders Online,* 129 Cal. App. 4th at 1189 ("It is true that '[t]he existence of an agency relationship is usually a question of fact, *unless the evidence is susceptible of but a single inference.*") (citation omitted) (emphasis in original). "[W]here the evidence is undisputed, the issue becomes one of law." 3 Witkin, Summary of Cal. Law: Agency & Employment, § 93, p. 140 (citing *Violette v. Shoup,* 16 Cal. App. 4th 611, 619 (1993), *Magnecomp Cor. v. Athene Co.,* 209 Cal. App. 3d 526, 536 (1989)).

Here, the Court would conclude that the facts set forth in the TAC are not "susceptible of but a single inference" regarding Defendant Nunez's alleged agency. *Cf. Borders Online,* 129 Cal. App. 4th at 1189. Accordingly, the Court may not rule on the existence of an agency relationship (or lack thereof) as a matter of law, and it would thus deny Defendants' motion to dismiss.

The TAC alleges that "Plaintiffs and Nunez" agreed that Nunez "would present the Roscoe's Show Materials and concept in an attempt to get TV One to contribute financially to the final stages of production *and/or to enter a license agreement to broadcast the Roscoe's Show* on the TV One network." TAC ¶ 49 (emphasis added). Moreover, the TAC states that pursuant to multiple discussions with Plaintiffs, "Nunez *would have authority to act on behalf of Plaintiffs* in conveying the project and initiating the relationship between Plaintiffs and TV One, and that he would be *subject to the further control of Plaintiffs in carrying out this duty.* Nunez was to report back to Plaintiffs once he had presented the Roscoe's Show Materials and concept to TV One." *Id.* (emphasis added). These allegations sufficiently plead a "manifestation by the principal that the agent shall act for him," the "agent's [acceptance of] the undertaking," and "an understanding between the parties that the principal is to be in control of the undertaking." *See Bowoto v. Chevron Texaco Corp.,* 312 F. Supp. 2d 1229, 1239 (N.D. Cal. 2004).

Defendants assert that "[u]nder Plaintiffs' theory of fiduciary duty law, anytime someone asks someone to make an introduction, a fiduciary duty attaches." Def. Reply at 7. But the TAC does not merely allege that Defendant Nunez was asked "to make an introduction." Rather, in addition to the allegations set forth in the preceding paragraph, Plaintiffs claim that as far back as 2005, "Roscoe's Producers asked Nunez and Nunez agreed to act as the Roscoe's Producers' agent in connection with (a) presenting the concept of the Roscoe's Show to third persons and entities, (b) presenting certain written materials which might be drafted in connection with the Roscoe's Show to third persons and entities, and (c) once the series was sufficiently developed, ultimately 'pitching' the Roscoe's Show to appropriate television networks in the interests of licensing the rights to broadcast the series." TAC ¶ 26. The TAC further alleges that, after agreeing to act as Plaintiffs' agent in connection with the project, over the course of several years Defendant Nunez attended meetings and casting sessions and initiated relationships between Plaintiffs and various potential writers, actors, and other members of the television industry to

advance Roscoe's Show. *See, e.g.,* TAC ¶¶ 27, 33, 36, 38, 45.[4] Thus, the TAC not only alleges that Plaintiffs expressly entered into an agency relationship with Defendant Nunez, it also supports a plausible inference that the agency relationship here "may be implied based on conduct and circumstances." *Scholastic Book Clubs, Inc. v. State Bd. of Equalization*, 207 Cal. App. 3d 734, 748 (1989); *see also Borders Online*, 129 Cal. App. 4th at 1189; *Thayer v. Pacific Elec. Ry. Co.,* 55 Cal. 2d 430, 438 (1961).

Defendants argue strenuously that because Nunez was never empowered to alter the legal relationship between Plaintiffs and TV One it is impossible, as a matter of law, for him to have been Plaintiffs' "agent." *See, e.g.,* Def. Reply at 4-8. The TAC does, however, allege that Nunez had the "authority to act" on behalf of the Roscoe's Producers, and that he was tasked with attempting to "enter a license agreement to broadcast the Roscoe's Show on the TV One network." TAC ¶ 49. Viewed in the context of the multi-year relationship Plaintiffs had with Defendant and the facts set forth in the TAC as a whole, the allegation regarding Nunez's authority to discuss licensing terms with TV One also supports the existence of an agency relationship.[5]

For similar reasons, Defendants' argument that because Nunez never actually pitched Roscoe's Show to TV One he did not "undert[ake] to act on [Plaintiffs'] behalf" (and was thus not Plaintiffs' agent) is unavailing. Def. Mot. at 8. The TAC plainly alleges that "Plaintiffs and Nunez agreed that Nunez . . . would present the Roscoe's Show Materials and concepts [to TV One and] it was agreed that Nunez would have authority to act on behalf of Plaintiffs[.]" TAC ¶ 49. Defendants' argument that no agency existed because Nunez ultimately reneged on his agreement to pitch Roscoe's Show to TV One is puzzling, as it suggests that the alleged *breach* of Nunez's agency obligations somehow negates the agency's existence (which, according to Plaintiffs, began in 2005) altogether. To the extent Defendants' argument is premised on a factual dispute surrounding the alleged existence and scope of the agency relationship between the Roscoe Producers and Defendant Nunez, this argument is inapposite on a motion to dismiss. *See Wickham v. Southland Corp.*, 168 Cal. App. 3d 49, 55 (1985) ("[I]t is an elementary rule that the existence of agency is a factual question within the province of the trier of fact whose determination may not be disturbed on appeal if supported by substantial evidence . . . . Only when the essential facts are not in conflict will an agency determination be made as a matter of law.") (citations omitted).[6]

The Court would, however, agree with Defendants that Plaintiffs have failed to allege that Defendant Nunez acted as an agent or otherwise owed a fiduciary duty to *all four* Plaintiffs. The facts set forth in the TAC make clear that any agency relationship that may have existed was between Nunez and Roscoe's Producers – namely, Plaintiffs Herbert Hudson, Paul Goldsby, and

---

[4] Defendant Nunez also apparently received compensation from Plaintiffs for other projects and ventures he worked on during this period. *Id.* ¶ 45.

[5] Of course, whether Plaintiffs are able to actually prove that this authority in fact existed is a question not appropriate for resolution on a motion to dismiss.

[6] The parties did not address the question of whether any such agency would require a writing under the "equal dignities rule." *Cf. Clifton Cattle Co. v. Thompson*, 43 Cal. App. 3d 11, 17 (1974).

Kennedy Goldsby – not Goodness Films.[7]  Therefore, Defendants' motion to dismiss the breach of fiduciary claim is DISMISSED WITH PREJUDICE as to Plaintiff Goodness Films.

While Plaintiffs ultimately may be unable to prove that an agency relationship existed between Defendant Nunez and the Roscoe's Producers, the TAC alleges facts sufficient to support the existence of such a relationship. *Cf. Stilson v. Moulton-Niguel Water Dist.*, 21 Cal. App. 3d 928, 936 (1971) ("Where a conflict . . . exists from which either conclusion could be reached as to the [agency] status of the parties, the question must be submitted to the jury."). Because agency, in turn, is a relationship that imposes fiduciary obligations as a matter of law, the Court may not grant Defendants' motion to dismiss Plaintiffs' claims for breach of fiduciary duty.[8]

## IV.  Conclusion

The Court would DENY Defendants' motion to dismiss the breach of fiduciary duty claim and aiding and abetting breach of fiduciary duty claim with respect to Plaintiffs Herbert Hudson, Paul Goldsby, and Kennedy Goldsby.

The Court would GRANT WITH PREJUDICE Defendants' motion to dismiss the breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims with respect to Plaintiff Goodness Films.

[7]Moreover, Plaintiffs cite only TAC ¶ 49 in support of their argument that they have adequately pled that Defendant Nunez's fiduciary obligations attached to Goodness Films. *See* Pl. Opp. at 21.  However, this paragraph is entirely devoid of any reference to Goodness Films, and the TAC fails to otherwise plead any facts suggesting that Defendant Nunez had an agency relationship with Goodness Films regarding the advancement of Roscoe's Show.

[8]Given that Defendants sought dismissal of the aiding and abetting breach of fiduciary duty claim solely on the grounds that the TAC purportedly failed to establish an underlying duty, the Court would deny Defendants' motion to dismiss that claim as well.  A common law claim for aiding and abetting an intentional tort such as breach of fiduciary duty must allege that the defendant knew the other person's conduct constituted a breach of duty and gave substantial assistance or encouragement to the other to so act. *See Casey v. U.S. Bank Nat'l Assn.,* 127 Cal. App. 4th 1138, 1144 (2005); *see also* Rest. 2d Torts, § 876.  Plaintiffs allegations in this regard are set forth at TAC ¶¶ 27, 52-54.