1   Neville L. Johnson (SBN 66329)
2   Douglas L. Johnson (SBN 209216)
    James T. Ryan (SBN 210515)
3   Nicholas A. Kurtz (SBN 232705)
    JOHNSON & JOHNSON LLP
4   439 North Canon Drive, Suite 200
    Beverly Hills, California 90210
5   Telephone:   (310) 975-1080
    Facsimile:   (310) 975-1095
6   Email:       njohnson@jjllplaw.com
                 djohnson@jjllplaw.com
7                jryan@jjllplaw.com
                 nkurtz@jjllplaw.com
8
9   Attorneys for Defendant,
    Edwin B. "Ed." Weinberger
10

11              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| 13  GOODNESS FILMS, LLC; HERBERT HUDSON; PAUL GOLDSBY; and KENNEDY GOLDSBY, | CASE NO.: 2:12-cv-08688-GW-JEM |
| 14 | **DEFENDANT ED. WEINBERGER'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 15 | |
| 16           Plaintiffs, | |
| 17           v. | |
| 18  TV ONE, LLC; MIGUEL A. NÚÑEZ, JR.; and EDWIN B. "ED." WEINBERGER, | |
| 19 | Hearing |
| 20           Defendants. | Date:        October 21, 2013 |
| 21 | Time:        8:30 a.m. |
|  | Courtroom:  10 |
| 22 | |
| 23 | Hon. George H. Wu |
|  | Magistrate Judge John E. McDermott |
| 24 | |
| 25  AND RELATED THIRD-PARTY CLAIMS | Action Filed:     October 10, 2012 |
|  | Trial Date:       December 17, 2013 |
| 26 | |

27

28

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 8:30 a.m. on October 21, 2013 in Courtroom 10 of the above-entitled court located at 312 North Spring Street, Los Angeles, California 90012-4701, Defendant Edwin B. "Ed." Weinberger will and hereby does move for summary judgment or, in the alternative, partial summary judgment on all claims alleged against Defendant Weinberger in the Fourth Amended Complaint on the grounds that there is no genuine issue as to any material fact on any claim and that Weinberger is entitled to judgment as a matter of law.

This motion is generally based on the grounds that:

A. Plaintiffs' First Claim for Copyright Infringement fails because there is no substantial similarity between *Belle's* and *Roscoe's Show*.

B. Plaintiffs' First Claim for Copyright Infringement and Sixth Claim for Breach of Implied Contract fail because uncontroverted evidence proves that *Belle's* was created independently of *Roscoe's Show*.

C. Plaintiffs' Fourth and Fifth Claim for Aiding and Abetting Breach of Fiduciary Duty fail because (1) Plaintiffs cannot establish Defendant Núñez owed any fiduciary duty to Plaintiffs, (2) any purported breach caused damages to Plaintiffs, (3) Weinberger did not know of any fiduciary duty Núñez owed to Plaintiffs, (4) Weinberger could not and did not aid and abet a breach of any fiduciary duty, and (5) Plaintiffs cannot prove causation for damages.

D. Plaintiffs' Sixth Claim for Breach of Implied Contract fails because (1) Plaintiffs disclosed their idea before making a deal, (2) Plaintiffs never offered to sell their idea for the *Roscoe's Show* to Defendant Weinberger, and (3) Plaintiffs cannot show use of their ideas because the two works are not substantially similar.

E. Plaintiffs' Seventh Claim for Interference with Prospective Economic

i

1     Advantage fails because (1) Plaintiffs did not have any existing

2     relationships with third parties, (2) Weinberger was not aware of any

3     existing relationships, (3) Weinberger could not have interfered and did

4     not interfere with any relationships, (4) there is no independently

5     wrongful conduct, and (5) Plaintiffs cannot prove causation for damages.

6     F.  Plaintiffs' are not entitled to statutory damages or attorneys' fees because

7         they did not register their work before the alleged infringement.

8     Defendant brings this Motion pursuant to Federal Rules of Civil Procedure

9 ("FRCP") Rule 56.  This motion is made following the conference of counsel

10 pursuant to L.R. 7-3, which took place on September 11, 2013.

11     This Motion shall be based on this Notice of Motion and Motion, the

12 accompanying Memorandum of Points and Authorities, the evidence filed

13 concurrently herewith, the Court's file, and any other oral and/or documentary

14 evidence considered at or before the hearing on this motion.

15

16 DATED:  September 23, 2013          JOHNSON & JOHNSON LLP

17                                          By   /s/ James T. Ryan

18                                               Neville L. Johnson
                                                 Douglas L. Johnson
19                                               James T. Ryan
                                                 Nicholas A. Kurtz
20                                               Attorneys for Defendant,
                                                 Edwin B. "Ed." Weinberger
21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

I.      <u>SUMMARY OF ARGUMENT</u> .........................................................1

II.     <u>GOODNESS' COPYRIGHT INFRINGEMENT CLAIM FAILS</u> .............3

     a.  The Court Can Enter Summary Judgment
        Even Assuming Access ........................................................3

     b.  The *Roscoe's Show* Is Not Substantially Similar to *Belle's* .............3

         i.     Plot/Sequence of Events .........................................4

         ii.    Theme ..................................................................5

         iii.   Dialogue ..............................................................6

         iv.    Pace ....................................................................6

         v.     Mood ...................................................................6

         vi.    Setting .................................................................7

         vii.   Characters ............................................................7

            *1.*     *Sam Hobbs is not similar to*
                 *William "Big Bill" Cooper* ...........................8

            *2.*     *Wanda character is not similar to the*
                 *Elyse character* ...........................................9

            *3.*     *Momma character is not similar to the Gladys*
                 *character* ....................................................9

            *4.*     *Darrell character is not similar to the Maurice*
                 *character* ....................................................10

            *5.*     *Senator Weir and Tucker Crawford are not similar* .....11

     c.  It is uncontroverted that Weinberger independently created
        "Belle's" ...........................................................12

III.    <u>PLAINTIFFS' FIDUCIARY DUTY CLAIMS FAIL</u> .................13

     a.  Plaintiffs' fiduciary duty claim against Nunez fails .........................13

         i.     Plaintiffs cannot establish that Nunez owed any fiduciary
            duty .........................................................13

i

1                    1.      *Nunez was "absolutely not" authorized to alter*

2                            *Plaintiffs' legal relation with TV One* ........................... 14

3                    2.      *Plaintiffs never acted thought of Nunez as a fiduciary*

4                            *because they never trusted in Nunez* ............................. 14

5                    3.      *Plaintiffs never controlled Nunez did* .......................... 15

6             ii.     Plaintiffs cannot demonstrate causation .................................. 15

7                    1.      *Plaintiffs pitched the* Roscoe's Show *to TV One* .......... 15

8                    2.      *TV One would never have purchased the* Roscoe's

9                            Show *because it did not fit their demographics or*

10                          *mission to portray African-Americans in a positive*

11                          *light* ............................................................................... 16

12        b.  Weinberger cannot be held liable for aiding and abetting ................ 16

13            i.     Plaintiffs cannot establish that Weinberger had knowledge

14                  of Plaintiffs' discussions with Nunez regarding *Roscoe's*

15                  *Show* .................................................................................. 16

16            ii.    Weinberger cannot be held liable for aiding and abetting

17                  Nunez ................................................................................. 17

18  IV.   PLAINTIFFS' BREACH OF IMPLIED CONTRACT CLAIM FAILS ........ 17

19        a.  Plaintiffs' Blurted Out Their Idea for *Roscoe's Show* For The

20            Purpose of Entering a Business Relationship with Weinberger ........ 18

21        b.  Plaintiffs Admit They Never Offered To or Wanted To Sell The

22            *Roscoe's Show* To Nunez or Weinberger .......................................... 19

23        c.  The two works are not "substantially similar" ................................... 20

24        d.  It is uncontroverted that Weinberger independently created

25            "Belle's" ............................................................................................ 20

26  V.    PLAINTIFFS' INTERFERENCE WITH PROSPECTIVE ECONOMIC

27       ADVANTAGE CLAIM FAILS ................................................................ 21

28

1           a.  Plaintiffs did not have any existing economic relationship with

2                third parties that were interfered with ................................................ 21

3                  i.    Plaintiffs did not have any existing relationship with actors ... 21

4                  ii.    Plaintiffs did not have any existing relationship with any

5                          networks ................................................................................ 21

6                  iii.   Plaintiffs did not have any existing relationships with

7                          showrunners .......................................................................... 22

8           b.  Even if Plaintiffs could prove any existing relationships, Plaintiffs

9                cannot prove that Weinberger knew of those existing relationship ... 22

10          c.  Plaintiffs cannot prove that Weinberger or Nunez knowingly

11               interference with any existing relationships ...................................... 22

12                 i.    If, as Plaintiffs contend, Weinberger and Nunez were acting

13                      as Plaintiffs' agent then Weinberger and Nunez cannot be

14                      held liable for interfering with their principal's

15                      relationships ......................................................................... 22

16                ii.    Neither Weinberger and Nunez did anything to interfere

17                    with any relationships ............................................................ 22

18           d.  Because all of their other claims fail, Plaintiffs cannot establish

19                any independently wrongful conduct ................................................ 23

20           e.  Plaintiffs cannot demonstrate causation because TV One was

21                offered but rejected *Roscoe's Show* by an employee of Hi Point

22                Studios ............................................................................................ 23

23   VI.   GOODNESS CANNOT RECOVER STATUTORY DAMAGES OR

24         ATTORNEYS' FEES ON THE COPYRIGHT CLAIM ............................ 24

25   VII.  CONCLUSION .......................................................................................... 25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Aliotti v. R. Dakin & Co.*

4

      (9th Cir. 1987) 831 F.2d 898 .......................................................... 19

5

*Amtower v. Photon Dynamics, Inc.*

6

      (2008) 158 Cal.App.4th 1582 ...................................................... 13

7

*APSB Bancorp v. Thornton Grant*

8

      (1994) 26 Cal.App.4th 926 .......................................................... 15

9

*Benay v. Warner Bros. Entn't, Inc.*

10

      (9th Cir. 2010) 607 F.3d 620 ................................................. 3, 4, 6

11

*Berkic v. Crichton*

12

      (9th Cir. 1985) 761 F.2d 1289 ................................. 5FN1, 11FN10

13

*Bernal v. Paradigm Talent and Literary Agency*

14

      (C.D. Cal. 2010) 788 F.Supp.2d 1043 .......................................... 7

15

*Borders Online, LLC v. State Bd. Of Equalization*

16

      (2005) 129 Cal.App.4th 1179 ...................................................... 14

17

*Casey v. U.S. Bank Nat. Assn.*

18

      (2005) 127 Cal.App.4th 1138 ...................................................... 22

19

*Cavalier v. Random House, Inc.*

20

      (9th Cir. 2002) 297 F.3d 815 ..................................................... 3, 4

21

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*

22

      (1995) 11 Cal.4th 376 .................................................................. 23

23

*Desny v. Wilder*

24

      (1956) 46 Cal.2d 715 ....................................................... 17, 18, 19

25

*Edwards v. Freeman*

26

      (1949) 34 Cal.2d 589 ................................................................... 14

27

*Ets-Hokin v. Skyy Spirits, Inc.*

28

      (9th Cir. 2003) 323 F.3d 763 ...................................................... 11

TABLE OF AUTHORITIES

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*

    (1991) 499 U.S. 340 ................................................................. 3

*Fiol v. Doellstedt*

    (1996) 50 Cal.App.4th 1318 .................................................. 17

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*

    (9th Cir. 2006) 462 F.3d 1072 ................................. 3, 11, 11FN10

*Granite Music Corp. v. United Artists Corp.*

    (9th Cir. 1976) 532 F.2d 718 ................................................. 12

*Grant v. National Football League Players Ass'n*

    (C.D. Cal. May 22, 2012) 2012 WL 1870974 ........................ 15

*Grosso v. Miramax Film Corp.*

    (9th Cir. 2004) 383 F.3d 965 ........................................... 18, 19

*Hsu v. OZ Optics Ltd.*

    (N.D. Cal. 2002) 211 F.R.D. 615 .......................................... 21

*Idema v. Dreamworks, Inc.*

    (C.D. Cal. 2001) 162 F.Supp.2d 1129 ..................................... 3

*In re Gonda*

    (N.D. Cal. Oct. 31, 2011) 2011 WL 5240154 ........................ 14

*Janken v. GM Hughes Electronics*

    (1996) 46 Cal.App.4th 55 ...................................................... 17

*Klekas v. EMI Films, Inc.*

    (1984) 150 Cal.App.3d 1102 ................................................. 20

*Kouf v. Walt Disney Pictures & Television*

    (9th Cir. 1994) 16 F.3d 1042 ............................... 5FN1, 11FN10

*Mann v. Columbia Pictures, Inc.*

    (1982) 128 Cal.App.3d 628 ................................................... 20

*Meta-Film Associates, Inc. v. MCA, Inc.*

    (C.D. Cal. 1984) 586 F.Supp. 1346 ...................................... 12

v

TABLE OF AUTHORITIES

*Metcalf v. Bochco*
    (9th Cir. 2002) 294 F.3d 1069......................................................................3-4

*Mintz v. Blue Cross of California*
    (2009) 172 Cal.App.4th 1594........................................................................22

*Narell v. Freeman*
    (9th Cir. 1989) 872 F.2d 907.............................................................7FN3, 11

*New.Net, Inc. v. Lavasoft*
    (C.D. Cal. 2004) 356 F.Supp.2d 1090........................................................23

*Oakland Raiders v. Nat'l Football League*
    (2005) 131 Cal.App.4th 621........................................................................14

*Olson v. Nat'l Broad. Co.*
    (9th Cir. 1988) 855 F.2d 1446..................................................................6, 8

*PM Group, Inc. v. Stewart*
    (2007) 154 Cal.App.4th 55..........................................................................22

*Quirk v. Sony Pictures Entm't Inc.*
    (N.D. Cal., Apr. 2, 2013) 2013 WL 1345075 .............................................18

*Richard B. LeVine, Inc. v. Higashi*
    (2005) 131 Cal.App.4th 566........................................................................16

*San Francisco Design Ctr. Associates v. Portman Companies*
    (1995) 41 Cal.App.4th 29............................................................................23

*Shaw v. Lindheim*
    (C.D. Cal. 1992) 809 F.Supp. 1393............................................................12

*Sid & Marty Krofft Television Prod., Inc. v. McDonald's Corp.*
    (9th Cir. 1977) 562 F.2d 1157......................................................................3

*Southern California Institute of Law v. TCS Educ. System*
    (C.D. Cal. Apr. 5, 2011) 2011 WL 1296602...............................................16

*St. Paul Ins. Co. v. Industrial Underwriters Ins. Co.*
    (1989) 214 Cal.App.3d 117.........................................................................15

TABLE OF AUTHORITIES

*Sutton v. Walt Disney Productions*

    (1953) 214 Cal.App.3d 117 .......................................................................... 20

*Teich v. General Mills, Inc.*

    (1959) 170 Cal.App.2d 791 .......................................................................... 20

*Van't Rood v. County of Santa Clara*

    (2003) 113 Cal.App.4th 549 ........................................................................ 14

*William Hablinski Architecture v. Amir Construction, Inc.*

    (C.D. Cal. 2004) 2004 WL 4909901 ....................................................24FN14

*Youst v. Longo*

    (1987) 43 Cal.3d 64 ............................................................................... 21, 24


**NON-CALIFORNIA AUTHORITIES**

*Gerig v. Krause Publications, Inc.*

    (D.Kan. 1999) 58 F.Supp.2d 1261 ............................................................... 24

*Jones v. CBS, Inc.*

    (S.D.N.Y. 1990) 733 F.Supp. 748 ................................................................. 5

*Nichols v. Universal Pictures Corp.*

    (2nd Cir. 1930) 45 F.2d 119 ........................................................................ 11

*Oto Software, Inc. v. Highwall Technologies, LLC*

    (D. Colo., Aug. 6, 2010) 2010 WL 3842434 .........................................25FN14

*Wilson v. Brennan*

    (D.N.M. 2009) 666 F.Supp.2d 1242 ......................................................25FN14


**STATUTES**

17 U.S.C. §412 ...................................................................................24, 24FN13, 25

Fed. R. Civ. P. 56(g) .................................................................................... 24

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.  SUMMARY OF ARGUMENT

The Court should enter summary judgment because Plaintiffs, individually and collectively, cannot establish genuine disputes of material fact for any of their claims against Defendants Ed. Weinberger or Miguel A. Núñez, Jr.

With respect to the claim for direct copyright infringement, Plaintiffs are unable to establish a genuine dispute regarding the lack of substantial similarity between *Roscoe's Show* and *Belle's*.  Even if they could, Weinberger has rebutted any inference of copying by demonstrating how he independently created *Belle's*.

Plaintiffs' cannot prove their claim for aiding and abetting a breach of fiduciary duty by Núñez for several reasons.  First, Núñez was not acting as Plaintiffs' agent because, among other reasons, he was not given authorization or direction from Plaintiffs.  Even if Plaintiffs could establish a duty, they cannot demonstrate that any damages were caused by any alleged breach because Plaintiffs independently pitched TV One through another agent and TV One declined to move forward.  In addition, TV One would never have purchased *Roscoe's Show* because it did not fit within their demographics.  Consequently, there is no causation.  Because Plaintiffs cannot demonstrate a genuine dispute on this claim, Weinberger cannot be held liable for aiding and abetting.

Plaintiffs' breach of implied contract (*Desny*) claim should be dismissed because Plaintiffs blurted out their idea for *Roscoe's Show* to Weinberger and Núñez before entering into any type of negotiation with either.  Consequently, Plaintiffs cannot claim any protection for their idea.  Plaintiffs also lose because they admit they never offered to sell *Roscoe's Show* to Weinberger or Núñez.  In order for a *Desny* claim to survive summary judgment, there would have to be an implied agreement in connection with an offer to sell an idea to Weinberger or Núñez.  Instead, Plaintiffs wanted to keep their idea and develop and produce it themselves and then sell the show to TV One.  Consequently, there was no

1

agreement, express or implied, that Weinberger or Núñez would compensate Plaintiffs for anything – ever.  Even if Plaintiffs could demonstrate an implied agreement, they cannot demonstrate that Weinberger used Plaintiffs' idea for *Roscoe's Show* to create *Belle's* because the two ideas are not substantially similar. The premise for *Roscoe's Show* is a madcap, screwball comedy about the interactions of staff and employees at <u>the actual</u> Roscoe's House of Chicken and Waffles restaurant in Los Angeles.  The premise of *Belle's* is a "dramedy" about family members who run a fictional soul-food restaurant in Atlanta called "Belle's."  Further, even if the shows have superficial similarities, there is undisputed evidence that Weinberger independently created *Belle's*.

Plaintiffs' claim for interference with prospective economic relations fails on multiple grounds.  Plaintiffs have no evidence to show that they had any <u>existing</u> economic relationships with any actors, showrunners or networks.  In addition, Weinberger and Núñez were unaware of any existing relationship, primarily because there were none to be aware of.  Even if Plaintiffs were to show that Weinberger and Núñez knew of an existing relationship, Weinberger and Núñez did not and could not interfere with any relationship because, among other reasons, as Plaintiffs' purported agents they cannot be held liable for interfering with their principal's relationships as a matter of law.   The interference claim also fails because Plaintiffs cannot demonstrate any independently wrongful conduct by Weinberger or Núñez.  If all of the foregoing were not enough to sink the claim, Plaintiffs cannot demonstrate any proximately caused damages because Plaintiffs independently pitched *Roscoe's Show* to TV One and no deal ever materialized.

Finally, Plaintiffs cannot recover statutory damages on their copyright infringement claims because they did not register their work before the alleged infringement.

///

///

## II.     GOODNESS' COPYRIGHT INFRINGEMENT CLAIM FAILS.

In order to prove copying, Goodness must demonstrate "the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).

### a.   The Court Can Enter Summary Judgment Even Assuming Access.

"No amount of proof of access will suffice to show copying if there are no similarities." *Sid & Marty Krofft Television Prod., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977); *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1081 (9th Cir. 2006) (affirming summary judgment exclusively on the issue of substantial similarity where district court assumed for the sake of argument defendants' access to the allegedly infringed work).

### b.   The *Roscoe's Show* Is Not Substantially Similar to *Belle's*

"The most fundamental axiom of copyright law is that '[n]o author may copyright his ideas." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344-45 (1991). While ideas are not protectable, expressions that include "specific details of an author's rendering of ideas," are protectable. *Funky Films*, 462 F.3d at 1077; *see also Idema v. Dreamworks, Inc.*, 162 F. Supp.2d 1129, 1177 (C.D. Cal. 2001) (copyright does not extend to "facts, historical events, or other information over which no individual is entitled to claim a monopoly").

"The substantial-similarity test contains an extrinsic and intrinsic component." *Funky Films*, 462 F.3d at 1077.  The Court applies the "extrinsic test," an objective test based on specific expressive elements.  *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010). "In applying the extrinsic test, [the] court compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Funky Films*, 462 F.3d at 1077 (quotation omitted).  "[P]rotectable expression includes the specific details of an author's rendering of ideas." *Metcalf*

3

1   *v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002). However, scenes-à-faire, which

2   flow naturally from generic plot-lines, are <u>not</u> protectable. *Id*.

3       The Court "must take care to inquire only whether the *protectable elements,*

4   *standing alone*, are substantially similar." *Cavalier*, 297 F.3d at 822 (quotation

5   omitted) (italics in original). "In so doing, [the court] filter[s] out and disregard[s]

6   the non-protectable elements in making [the] substantial similarity determination."

7   *Funky Films*, 462 F.3d at 1077 (internal quotation and alteration omitted).  The

8   Court is to "focus[] on articulable similarities between the plot, themes, dialogue,

9   mood, setting, pace, characters, and sequence of events in two works, and courts

10  must take care to inquire only whether the protectable elements, standing alone, are

11  substantially similar." *Benay*, 607 F.3d at 624 (affirming court's decision that the

12  works were not substantially similar though they shared many details such as,

13  identical titles, and a historically unfounded premise of an American war veteran

14  going to Japan to train the Imperial Army). As demonstrated below, there are no

15  <u>protectable</u> similarities – and certainly no <u>substantial</u> similarities – between

16  *Roscoe's Show* and *Belle's*.

17              i.  <u>Plot/Sequence of Events</u>

18      A show about a soul-food restaurant is itself too generic to be protectable.

19  *See Funky Films*, 462 F.3d at 1801 (no protection for similar plots involving "the

20  family-run funeral home, the father's death, and the return of the 'prodigal son,'

21  who assists his brother in maintaining the family business"); *see also Benay*, 607

22  F.3d at 626 (rejecting a copyright claim where the plots of the works developed

23  "quite differently" despite certain similar elements such as shared premise of

24  historical samurai uprising in Japan).

25      In *Belle's*, the pilot centers almost exclusively on Tucker Crawford's offer to

26  rent out the restaurant for a reunion and the racial tensions brought about by the

27  offer, as well as the family dynamic more generally in the wake of Belle's death

28  (her portrait hangs in the restaurant, and she appears to look down on the

4

1  proceedings sagely).  The sequence of events is linear. [UF 34]

2  *Roscoe's Show* instead presents a comedic portrait of a bustling casual

3  restaurant, and the non-linear sequence of events largely concerns the romantic

4  entanglements of the staff (who are not an actual family) and the amusing antics of

5  hapless employee Darell. [UF 33]  The closest thing to a plot in *Roscoe's Show* is

6  the Darrell blown-tire story, which is <u>not</u> a plot or story that is found in *Belle's*.

7  "[A]ll fictional plots, when abstracted to a sufficient level of generalization,

8  can be described as similar to other plots."  *Jones v. CBS, Inc.*, 733 F.Supp. 748,

9  753 (S.D.N.Y. 1990) (claim of infringement involving the show *Frank's Place*).

10  Here, the basic plot similarities that the Court previously noted in connection with

11  the motion for preliminary injunction are abstracted to a level of generalization that

12  would not be protectable.[1]

13         ii.  <u>Theme</u>

14  The themes of the two works are different.  In *Belle's*, the restaurant

15  engenders family cohesion, as the family bonds upon learning of both their error as

16  to the true history of their family's long-ago interactions with the Crawford Clan.

17  [UF 36]

18  *Roscoe's Show* instead largely focuses on the social and professional

19  aspirations of the characters, and entirely lacks the family bonding component that

20  is central to the restaurant's vibe and the show's theme in *Belle's* because, among

21  other reasons, *Roscoe's Show* does not involve a cast of comprised entirely of

22   

---

23  [1] The Court noted generic abstractions found in both shows such as:  (1)

24  restaurant owners who have an apprehension that a white man is trying to pull one over on them, and end of being in the wrong, to their sheepish chagrin; (2) a loveable but incompetent employee; (3) attractive ladies who strive for something

25  other than what they presently have in life and have no shame about using their looks to achieve that goal. [Dkt. 67, p. 9]  No one can claim ownership of these

26  basic ideas for a story, which can be found in shows, films, books and plays throughout history.  "General plot ideas are not protected by copyright law; they

27  remain forever the common property of artistic mankind."  *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985); *see also Kouf v. Walt Disney Pictures &*

28  *Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (the life struggle of kids fighting insurmountable dangers is too generic to be protectable).

1   family members.  [UF 35]  *See Benay*, 607 F.3d at 627 (rejecting argument that

2   "general themes" that "arise naturally from the premise" of the type of story at issue

3   were substantially similar).

iii.  Dialogue

5   To establish a claim of substantial similarity based on dialogue, a plaintiff

6   must establish the "extended similarity of dialogue." *Olson v. Nat'l Broad. Co.*, 855

7   F.2d 1446, 1450 (9th Cir. 1988).

8   There are no similarities in dialogue between the two works.  *Roscoe's Show*

9   uses a lot of slang.  [UF 37]  There is no slang used in *Belle's*.  [UF 38]  In addition,

10  the Pam character in *Belle's* "breaks the fourth wall" by speaking directly to the

11  camera/audience in a very mature way for an 11-year old.  [UF 39] *Roscoe's Show*

12  does not employ this dramatic device.

iv.  Pace

14  The works differ in pace.  *Roscoe's Show* is a whirlwind adventure told

15  through snippets of conversation among a multitude of characters (over thirty

16  speaking parts), whereas *Belle's* features longer scenes with poignant moments

17  among a smaller subset of characters (eight speaking parts).[2]  [UF 40-41]  There is

18  no similarity between the casual, fast paced *Roscoe's Show's* pace, as compared

19  with the more sentimental and measured *Belle's*.

v.  Mood

21  *Belle's* features numerous bittersweet moments, such as when the family

22  gazes at the portrait of the deceased Belle, or when "Big Bill" laments the horrors

23  of slavery (albeit in a light-hearted manner).  [UF 43]   The use of Pam, a pre-teen

24  member of *Belle's* family, as narrator, also lends *Belle's* a sentimental air that is

25  absent in the grittier *Roscoe's Show*, which is described by Plaintiffs as a madcap

26

27

28

[2] This is primarily due to the fact that *Belle's* is shot as a one camera show (like a film) and *Roscoe's Show* was contrived as a multi-camera show (like most other sitcoms). [UF 56]

6

screwball comedy.  [UF 42]  *Belle's* is more of a dramatic comedy (i.e.,

"dramedy").  [UF 44]

vi.  <u>Setting</u>

The settings are different. *Roscoe's Show* is set in Los Angeles at a real

restaurant (Roscoe's House of Chicken and Waffles ["Roscoe's"]) that is casual.[3]

[UF 15]  Roscoe's is a tourist destination.  [UF 20]  Roscoe's does not have a bar

and does not serve alcohol. [UF 21]  *Roscoe's Show* has a thriving restaurant in the

'hood that is bustling with customers and a multitude of multi-cultural staff

members who have short speaking roles.  [UF 17]

On the other hand, *Belle's* is set in Atlanta at a fictional restaurant that is

upscale.  [UF 22]  The restaurant in *Belle's* has table cloths and is not a tourist

destination.   [UF 23]  *Belle's* has a bar and serves alcohol.  [UF 24]  *Belle's* is set

at a restaurant that is not thriving and is in dire financial straits, including not

enough money ($1,200) to put in a new stove burner and has little to no patrons that

are seen during the show.  [UF 25]  The scenes primarily capture interactions

during the restaurant's off hours.  [UF 26]  There are few customers and those who

are present are primarily African-American.  There are no cultures represented by

speaking characters other than African-Americans and Caucasians.  [UF 27]  *See*

*Funky Films*, 462 F.3d at 1080 (finding no similarity "[a]lthough both works take

place in a contemporary, family-run funeral home[.]").

vii.  <u>Characters</u>

"Generalized character types are not protected by copyright law." *Bernal v.*

*Paradigm Talent and Literary Agency*, 788 F.Supp.2d 1043, 1069 (C.D. Cal. 2010)

(citation omitted).  The Ninth Circuit has only allowed copyright protection for

characters that are "especially distinctive," and character traits that loosely

---

[3] Where a plaintiff's work purports to be substantially based on biographical or historical fact – as is the case with *Roscoe's Show* – only the "bodily appropriation" of the expression of those facts is copyrightable. *Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989).

correspond between two works do not create substantial similarity. *Olson*, 855 F.2d at 1452 (although characters such as Mickey Mouse or Superman may be protected under copyright, loose correspondences between characters in two works will not render the works substantially similar).

> 1. *Sam Hobbs is not similar to William "Big Bill" Cooper*

Sam is based on a real life person[4], Herb Hudson[5], who is characterized as a patriarchal figure in terms of the restaurant and its staff, but he is not the patriarch of an actual family. He is described as a "sour puss who can charm you with his biting put downs." Sam does not have any daughters or sons and there is no indication from the Roscoe Show Materials that he is or was married. Sam is not a fish-out-of-water. He is in his element as the founder and owner of the Roscoe's restaurant. Sam is autonomous and has no one to answer to in terms of decisions he makes. There are no personal stories about Sam in the Roscoe's Script or emotional investments to any of the other characters. [UF 45]

On the other hand, "Big Bill" is a fictional character who is an actual patriarch of a family. He is a dapper, family man and Christian who is running a restaurant with his two daughters and sister-in-law after the passing of his wife. He is a fish-out of water, who is struggling with raising two daughters and a granddaughter without his wife. He has two single daughters, one of which is divorced and is raising a 10-year old daughter. He is surrounded by and living with

---

[4] *See* note 1, supra, regarding copyrighting biographical facts.
[5] Even if the "patriarch" character in the two works bear some similarity because they are older men who own a restaurant, these similarities are not enough to render the works substantially similar. The patriarch character is commonplace African-American television shows created by Weinberger, e.g., Bill Cosby in *The Cosby Show*, James Avery in *Sparks*, Sherman Hemsley in *Amen*, as well as in other African-American shows involving restaurants, such as Tim Reid in *Frank's Place*. *See Idema*, 162 F.Supp.2d at 1177, 1183 (noting that certain events depicted in the works were nearly scenes-á-faire because they were so standard in the treatment of a given idea that they were necessary to the story). Thus, even if the "patriarch" characters in the two works share certain similar superficial traits, such as being "cantankerous," the traits of the Sam character in *Roscoe's Show* are not "especially distinctive" such that they are entitled to copyright protection, nor are the similarities so uncanny that they are substantially similar.

8

women while trying to run a restaurant without his life-long partner.  "Big Bill" has a family to answer to in terms of decisions made at the restaurant.  The audience learns about personal stories about "Big Bill" and the emotional decisions he has to make for his family.  [UF 46]

### 2. *Wanda character is not similar to the Elyse character*

Wanda is described in the character bible as a "shameless know it all" waitress in her 20s who is a "die hard gold-digger."  She is described as "all head and no heart" who "suppresses her emotions in order to get the things in life that her brain tells her she's entitled to."[6]  [UF 47]

On the other hand, Elyse is older (in her late 30s) and is not a die hard gold-digger.  She is a grown-up, stylish, sophisticated woman who has emotional connection to the other family member characters.  She wants her father to love her.  She is not a waitress at the restaurant and does not wear a uniform.  Instead, she is a part-time hostess and event planner.  [UF 48]

### 3. *Momma character is not similar to the Gladys character*

Momma is also based on a real life person, called Momma, who works at the actual Roscoe's restaurant on Pico as a waitress.  Momma comes across like Tyler Perry's Madea character.  Her domain is the "front" of the restaurant.  She has no familial relationship with the Sam character.  Although the character bible states that she is a "wise, supportive, insightful type," the script does not support those characteristics.  The script describes Momma as a "no non-sense, enforcer."  In the script, she asks a young boy who is crying whether he would like a "good, old fashion whippin'?"  According to the character bible, Momma supposedly refers to herself in the third person.  Momma has no interaction with the main character and has a minor role in Roscoe's Show (three lines).  [UF 49]  Despite what the

---

[6] Plaintiffs' Wanda character appears to be the same as the character named "Sandra," played by Jackée Harry, in another well-known African-American sitcom, titled "227."  [UF 30]

1    character bible says, the script does not support the characteristic of Momma
2    supposedly being wise or supportive.

3       On the other hand, Gladys is a fictional character who works at Belle's as the
4    head chef.  Her domain is the kitchen and she is the boss of the kitchen.  She does
5    not interact with the customers.  She is "Big Bill's" sister-in-law and a central
6    figure to the show.  She has several substantive and emotional interactions with
7    "Big Bill" and has a say in what happens at the restaurant.  In her interactions with
8    "Big Bill," Gladys always has the last word.  She does not refer to herself in the
9    third person.  She is feisty and combative with a strong sense of her own self worth,
10    much like the Florida character in *Good Times*, played by Esther Rolle.[7] [UF 50]

11       *4. Darrell character is not similar to the Maurice character*

12       Darrell is also based on a real life person, who is the brother of Herb Hudson.
13    Darrell is described as he is in real life: dim-witted and bumbling.[8]  According to
14    the character bible, Darrell is the restaurant manager who is the brother of Sam.
15    However, in the script, Darrell is an errand boy for Sam.  Darrell is not a
16    womanizer.  [UF 51]

17       Maurice is the bartender at Belle's, not a restaurant manager, and is the
18    nephew of Big Bill.  Maurice is not bumbling or incompetent and, instead, he is a
19    street smart and savvy womanizer with an engaging personality.   He is not an
20    errand boy for Big Bill.  Maurice is played by Núñez who played the same type of
21    character (Maxey Sparks) on the television show "Sparks," which was created by
22    Weinberger.[9]  [UF 52]

23    ///

24

25       [7] *See* Ryan Decl., Ex. 21 (*Good Times* DVD).
        [8] Darrell appears to be the same dim-witted bumbling character as Jimmie
26    Walker's character "J.J." on *Good Times*, without the catchphrase "Dyn-o-mite."
      [UF 29]
27       [9] Episodes of "Sparks" are not available on DVD, but can be seen at:
      http://www.youtube.com/watch?v=KOsgc1IXF1U,
28    http://www.youtube.com/watch?v=d10zXIF7AQE,
      http://www.youtube.com/watch?v=mwqe1B0snkA

5. *Senator Weir and Tucker Crawford are not similar*

Senator Weir was not a series regular and he was not going to be played by a white actor. He does not pose any dilemma for Sam. He is just a foil to show that Sam is smarter than Senator Weir. Sam has no misapprehension about Senator Weir. Senator Weir is some sort of politician. [UF 54]

On the other hand, Tucker Crawford is played by a white actor who poses a dilemma for "Big Bill" based on a misunderstanding. Mr. Crawford is not a politician, but is in the promotion industry. [UF 55]

A few similar traits do not make the characters "especially distinctive" such that they would be entitled to copyright protection, nor are the similarities so uncanny that they could be deemed "substantially similar." "The less developed the characters, the less they can be copyrighted; that is the penalty an author must bear for marking them too indistinctly." *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) (citing *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2nd Cir. 1930)). Nor can Plaintiffs prove "bodily appropriation" of the expression of real-life places or people. *Narell*, 872 F.2d at 911.

When all of the factors are considered, the common features of the works' protectable elements, taken separately or together, would not lead a trier of fact to conclude that the works are substantially similar. Each factor in the extrinsic test militates so strongly in Defendants' favor that no reasonable jury could conclude that *Roscoe's Show* and *Belle's* are substantially similar. Because Goodness cannot satisfy the extrinsic test, it cannot establish copyright infringement as a matter of law. *See Funky Films*, 462 F.3d at 1077.[10]

---

[10] *Roscoe's Show* and *Belle's* are more different than other works that courts have found to lack substantial similarity as a matter of law. *See*, *e.g.*, *Funky Films*, 462 F.3d at 1077-81 (no substantial similarity between two works about a small funeral home and the intimate lives of family members who operated it after the death of the family patriarch and the return of the "prodigal son"); *Kouf*, 16 F.3d at 1045-46 (no substantial similarity between two family comedy/adventure films about people who are accidentally shrunk); *Berkic*, 761 F.2d at 1293 (no substantial similarity between two works about young professionals exposing a criminal

11

c. It is uncontroverted that Weinberger independently created "Belle's."

Even if Plaintiffs could establish an inference of copying, it is rebutted by the uncontroverted evidence of independent creation.  "A presumption of copying of plaintiff's work by defendants arises where plaintiff offers proof that the author of defendants' work had a reasonable opportunity to gain access to plaintiff's work and the two works are substantially similar in their protectible expression; to rebut the presumption, defendants then must produce evidence which offers an alternative reason for the similarity other than copying (i.e., independent creation)."  *Shaw v. Lindheim*, 809 F.Supp. 1393, 1402 (C.D. Cal. 1992); *see also Granite Music Corp. v. United Artists Corp.*, 532 F.2d 718, 720 (9th Cir. 1976); *Meta-Film Associates, Inc. v. MCA, Inc.*, 586 F.Supp. 1346, 1355 (C.D. Cal. 1984).

In terms of his television background, Weinberger is steeped in African-American comedy.  Weinberger created four popular African-American sitcoms long before Plaintiffs ever conceived of *Roscoe's Show*:  *The Cosby Show*, *Amen*, *Sparks*, and *Good News*.  [UF 57]  Several of the shows created by Weinberger had restaurants or bars as settings.  [UF 58]  In 2009, Weinberger prepared a "book" for a musical called "Club Paradise" which was about an African-American owned and operated restaurant/road house/bar /bordello with a matriarch named: "Ma"; a sexy, gold digger named "Lulu"; and a womanizer named "Swag."  [UF 59]  Weinberger has frequented soul food restaurants since the 1960s and even approached a prominent chef about starting a soul-food restaurant.  [UF 60]

With respect to *Belle's*, Weinberger created the premise of the show based on the information provided by Toni Judkins, the then-Senior Vice-President of Original Programming.  Specifically, in late July 2011, Weinberger received an email (that Ms. Judkins sent out) from Núñez which described the type of programming that TV One was soliciting.  [UF 61]  Among other things, Ms. Judkins indicated that TV One's primary demographic is females ages 25 to 54

organization that murders healthy people and sells the organs for transplants).

from the Southeast and that they were looking for shows involving family values and food.  [UF 62]  Based on the information TV One provided and from his own personal experiences, Weinberger conceived of and pitched four different ideas for potential shows: *My Mother the Diva*, the "untitled black church show," *Belle's*, and a reality show.  [UF 63]  *My Mother the Diva* was a variation on a show that Weinberger had previously began to create that starred Robin Givens.  [UF 64]  The "untitled church show" was a spin on Weinberger's successful church show *Amen*. [UF 65]  The idea for *Belle's* was originally pitched with a female lead ("Belle") and later changed to a male lead by Ms. Judkins ("Big Bill").  [UF 66]  In addition, the premise of the pilot episode for *Belle's* ("One Big Happy Family") was inspired by real-life descendants of slaves and slave owners called the Hairstons, who attend family reunions together as one clan.  [UF 67]  In sum, there is no evidence that Weinberger used anything he was told by the *Roscoe's Show* producers to create *Belle's*.[11]

## III.   PLAINTIFFS' FIDUCIARY DUTY CLAIMS FAIL.

   a.   Plaintiffs' fiduciary duty claim against Núñez fails.

Under California law, the elements of a cause of action for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach.  *Amtower v. Photon Dynamics, Inc.*, 158 Cal.App.4th 1582, 1599 (2008).

   *i.   Plaintiffs cannot establish that Núñez owed any fiduciary duty.*

While "there is no bright-line" test used in determining agency, California courts have considered the following in deciding whether an agency relationship exists: (1) whether the agent has power to alter the legal relationships of the principal; (2) whether the agent acts as the fiduciary of the principal; (3) whether

---

[11] When Weinberger met with the *Roscoe's Show* producers, he suggested the setting of upscale soul-food restaurant, Harold & Belle's, in Los Angeles, as a possibility for *Roscoe's Show*.  But, the *Roscoe's Show* producers specifically rejected the notion of an upscale soul-food restaurant as the setting.  [UF 18]

the principal can control the agent; and (4) whether the agent consents to act as the principal's agent. *See Borders Online, LLC v. State Bd. of Equalization*, 129 Cal.App.4th 1179, 1190-91 (2005) (discussing general use of the four preceding factors but noting the absence of a "bright-line" and indicating that trial courts are not required to apply each factor); *see also Van 't Rood v. County of Santa Clara*, 113 Cal.App.4th 549, 571 (2003) ("Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control.")

An agency relationship will not be created where evidence shows nothing more than friendly or filial service. *Edwards v. Freeman*, 34 Cal.2d 589, 591-592 (1949).  Put another way, a gratuitous deed does not create an agency relationship. *See Van't Rood*, 113 Cal.App.4th at 572 (finding that a person does not become the agent of another simply by offering help); *see also In re Gonda*, 2011 WL 5240154, *6 (N.D. Cal. Oct. 31, 2011) (providing casual advice is insufficient to establish an agency relationship).  Likewise, mere contractual relationships, without more, do not give rise to fiduciary relationships. *Oakland Raiders v. Nat'l Football League*, 131 Cal.App.4th 621, 633-34 (2005).

1. Núñez was "absolutely not" authorized to alter Plaintiffs' legal relations with TV One.

It is undisputed that Núñez did not have any authority to alter relations with TV One. [UF 87]

2. Plaintiffs never thought of Núñez as a fiduciary because they never trusted in Núñez.

No fiduciary duty existed because Plaintiffs never trusted Núñez.  [UF 73, 76, 78]

///

### 3. Plaintiffs never controlled what Núñez did.

A critical element to finding an agency relationship is whether the principal has the right to control the agent. *See Grant v. National Football League Players Ass'n*, 2012 WL 1870974, *3 (C.D. Cal. May 22, 2012); *see also St. Paul Ins. Co. v. Industrial Underwriters Ins. Co.*, 214 Cal.App.3d 117, 122 (1989) (no right to control the purported agent where purported principal placed no limits on timing or means of performing the task at issue). Factors including whether the principal and agent are engaged in distinct occupations, the skill required to perform the agent's work, whether the principal or agent supplies the workplace and tools, the length of time for completion, and whether the work is part of the principal's regular business are considered in determining whether requisite control exists to find an agency relationship. *APSB Bancorp v. Thornton Grant*, 26 Cal.App.4th 926, 933 (1994).

Núñez was not given any specific instructions about what to do other than to "attract powerful people that could be in a position to get the show green-lighted at a distributor; writers, directors, a network…" [UF 79-81, 84-85]  No other controls were in place.  While Plaintiffs may have asked Núñez to do something, there was no discussion or common understanding over how Núñez was to accomplish that task.  Nor did Plaintiffs supply Núñez with any means of achieving the task; Núñez was supposed to make the introduction on his own.  Further, there was no defined time frame within which Núñez must complete the task of bringing *Roscoe's Show* to TV One.  He was just supposed to do it before someone else did.  [UF 82] Finally, there was nothing concrete or specific as to what Núñez would receive from Plaintiffs.  [UF 83]  All of this indicates lack of control.

#### ii.  *Plaintiffs cannot demonstrate causation*

##### 1.  Plaintiffs pitched the *Roscoe's Show* to TV One.

Two people unsuccessfully pitched *Roscoe's Show* to TV One long before *Belle's*.  First, Norbert Pickett was unable to convince TV One to move forward with *Roscoe's Show* after he pitched it in 2009 or 2010.  [UF 91]  Second, Herb

Hudson, himself, unsuccessfully pitched *Roscoe's Show* to Cathy Hughes, the
founder and owner of TV One, in 2011.  [UF 92]  Given that TV One rejected both
of <u>Plaintiffs' own pitches of Roscoe's Show</u>, Plaintiffs can never demonstrate that
Núñez would have fared any better.

> 2. <u>TV One would never have purchased the *Roscoe's Show*</u>
> <u>because it did not fit their demographics or mission to</u>
> <u>portray African-Americans in a positive light.</u>

TV One set itself apart in the market by airing shows that portray African-
Americans in a positive light. [UF 93]  Its primary audience is females ages 25 to
54. [UF 62]  TV One airs intelligent, original programming that portrayed African-
Americans in a positive light and was not like the "yuk, yuk," "screwball" African-
American comedies that were on other networks.  [UF 96]  Because the *Roscoe's
Show* was not the type of show that fit within TV One's demographics or brand [SS
#], Plaintiffs cannot demonstrate causation.

> b. <u>Weinberger cannot be held liable for aiding and abetting.</u>

Because aiding and abetting liability "depends upon the actual commission of
a tort," there can be no liability for aiding and abetting breach of fiduciary duty
without a breach of fiduciary duty.  *See Southern California Institute of Law v. TCS
Educ. System*, 2011 WL 1296602, *6 (C.D. Cal., Apr. 5, 2011, CV 10-8026 PSG-
AJWX) (citing *Richard B. LeVine, Inc. v. Higashi*, 131 Cal.App.4th 566, 574-575
(2005)).  As explained above, Plaintiffs cannot state a breach of fiduciary duty
claim against Núñez.  Accordingly, Weinberger cannot be held liable for aiding or
abetting a non-existent tort.  Plaintiffs' claim fails for other reasons.

> i. *Plaintiffs cannot establish that Weinberger had knowledge of*
> *Plaintiffs' discussions with Núñez regarding Roscoe's Show.*

Núñez never told Weinberger about any purported agreement he had with
*Roscoe's Show* producers regarding *Roscoe's Show*.  [UF 88]  Weinberger was
unaware that Núñez was asked by Plaintiffs to approach TV One with *Roscoe's*

*Show*.  [UF 89]

> ii.   *Weinberger cannot be held liable for aiding and abetting Núñez.*

"The concept of aiding and abetting involves two separate persons, one helping the other." *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 77 (1996).  Aiding and abetting requires "concerted wrongful action" between two different people. *Id*. at 78.  For example, a corporate employee cannot conspire with his or her corporate employer; that would be tantamount to a person conspiring with himself. Thus when a corporate employee acts in his authorized capacity on behalf of his or her corporate employer, there can be no claim of conspiracy between the corporate employer and the corporate employee. In such a circumstance, the element of concert is missing.  According to *Janken*, "[s]imilar reasoning applies to aiding and abetting." *Id*.; *see also Fiol v. Doellstedt*, 50 Cal.App.4th 1318, 1326 (1996) (employee acting on behalf of the employer cannot be acting in concert with the employer, as there is in law only a single actor).

At all relevant times, Weinberger was the "agent[], employee[], partner[], joint venture[],… principal[], and/or employer[] of" Núñez.  [UF 97]   Further, every act by Weinberger was "done within the course and scope of that agency, partnership, employment, ownership, or joint venture" with Núñez and "with the approval and consent of" Núñez.  [UF 98] Given these facts, Weinberger cannot be held liable for aiding and abetting Núñez in his purported breach of fiduciary duty because Weinberger and Núñez are treated as one under the law.

## IV.   PLAINTIFFS' BREACH OF IMPLIED CONTRACT CLAIM FAILS

Generally, there is no property right in an idea.  "'The general rule of law is, that the noblest of human productions – knowledge, truths ascertained, conceptions, and ideas – become, after voluntary communication to others, free as the air to common use.'" *Desny v. Wilder*, 46 Cal.2d 715, 731-732 (1956).  Notwithstanding, the California Supreme Court held in *Desny* that an idea can be the subject of an express or implied contract under certain conditions.  A writer and producer form

1    an implied contract where both understand that the writer discloses his idea on the
2    condition that he will be compensated if it is used.  *Desny*, 46 Cal.2d at 739.

3         "To establish a *Desny* claim for breach of implied-in-fact contract, the
4    plaintiff must show that the plaintiff prepared the work, <u>disclosed the work to the</u>
5    <u>offeree for sale</u>, and did so under circumstances from which it could be concluded
6    that the offeree voluntarily accepted the disclosure knowing the conditions on
7    which it was tendered and the reasonable value of the work." *Grosso v. Miramax*
8    *Film Corp.*, 383 F.3d 965, 967 (9th Cir. 2004).

9         "[T]he idea purveyor cannot prevail in an action to recover compensation for
10   an abstract idea <u>unless</u> (a) before or after disclosure he has obtained an express
11   promise to pay, or (b) the circumstances <u>preceding</u> and attending disclosure,
12   together with the conduct of the offeree acting with knowledge of the
13   circumstances, show a promise of the type usually referred to as 'implied' or
14   'implied-in-fact.'" *Desny*, 46 Cal.2d at 738 (emphasis added).  "The law will not
15   imply a promise to pay for an idea from the mere fact that the idea has been
16   conveyed, is valuable, and has been used for profit; this is true even though the
17   conveyance has been made with the hope or expectation that some obligation will
18   ensue." *Id*. at 739.

19        a.  <u>Plaintiffs' Blurted Out Their Idea for *Roscoe's Show* For The Purpose</u>
20            <u>of Entering Into a Business Relationship with Weinberger.</u>

21        "The idea man who blurts out his idea without having first made his bargain
22   has no one but himself to blame for the loss of his bargaining power. The law will
23   not in any event, from demands stated subsequent to the unconditioned disclosure
24   of an abstract idea, imply a promise to pay for the idea, for its use, or for its
25   previous disclosure." *Desny*, 46 Cal.2d at 739; *Quirk v. Sony Pictures Entm't, Inc.*,
26   2013 WL 1345075, *12 (N.D. Cal., Apr. 2, 2013, C 11-3773 RS) (demands for
27   compensation made many years after the ideas were unconditionally disclosed
28   cannot "imply a promise to pay for the idea, for its use, or for its previous

1    disclosure").

2        Here, disclosure of ideas was made before any agreement was reached and in

3    connection with a contemplated future business relationship with Weinberger.  Paul

4    Goldsby disclosed the idea for *Roscoe's Show* before there was any agreement

5    discussed or reached with Núñez or Weinberger.  [UF 102]  In addition, Plaintiffs

6    disclosed their idea for *Roscoe's Show* for the sole purpose of inducing Weinberger

7    to possibly be a writer and/or director for *Roscoe's Show*.  [UF 103]   Plaintiffs

8    were never able to reach any sort of agreement with Weinberger for his writing

9    services. [UF 105]   More importantly, Plaintiffs never offered to sell *Roscoe's*

10   *Show* to Weinberger or Núñez.  [UF 106-107]  Consequently, Plaintiffs' claim fails

11   because they expected *to pay* Weinberger for his writing services – not *to receive*

12   compensation from Weinberger for selling their idea.  *See Aliotti v. R. Dakin & Co.*,

13   831 F.2d 898, 902 (9th Cir. 1987) (no contract may be implied where an idea has

14   been disclosed not to gain compensation for that idea but for the sole purpose of

15   inducing the defendant to enter a future business relationship).  The claim also fails

16   because Plaintiffs disclosed their idea for *Roscoe's Show* before having made any

17   type of deal with Weinberger.  *See Desny*, 46 Cal.2d at 739.[12]

18           b.  Plaintiffs' Admit They Never Offered To or Wanted To Sell The

19               *Roscoe's Show* To Núñez Or Weinberger.

20       In order to state a *Desny* claim, the disclosure of the idea must be in the

21   context of an offer for sale. *See Grosso*, 383 F.3d at 967.  As mentioned above,

22   Plaintiffs never offered to sell *Roscoe's Show* to Weinberger or Núñez.  [UF 106-

23   107]

24   ///

25

26   _____

27       [12] Plaintiffs also disclosed their idea to the world before they could have even
     entered into any contract with Weinberger.  The premise behind the 2004 Roscoe's
     Movie and *Roscoe's Show* is the same.  [UF 5] Consequently, the idea to have a
28   show about the real life Roscoe's restaurant was disclosed to the world long before
     Plaintiffs contend they presented the idea to Weinberger.

19

c.  The two works are not "substantially similar."

Where there is no direct evidence of a defendant's use of plaintiff's idea, plaintiff may raise an inference of use by "[a] showing of access and similarity." *Teich v. General Mills, Inc.*, 170 Cal.App.2d 791, 797 (1959). "The standard for determining similarity is 'the common knowledge of the average reader, observer, spectator or listener.' [Citation.]" *Id*. at 798.  "For purposes of comparison therefore the works must be viewed as a whole 'without dissection and without expert or elaborate analysis.' [Citations.]" *Klekas v. EMI Films, Inc.*, 150 Cal.App.3d 1102, 1111-1112 (1984).  Thus, like the copyright claim, Plaintiffs are required to show "substantial similarity" between *Roscoe's Show* and *Belle's* in order to prevail on their implied contract claim.  *Sutton v. Walt Disney Productions*, 118 Cal.App.2d 598, 603 (1953).

Fundamentally, the two ideas are not the same.   The premise of *Roscoe's Show* is:  a screwball comedy about a real-life, casual soul-food restaurant in Los Angeles and interactions between its real-life patrons and employees.  [UF 110] The premise of *Belle's* is: a sitcom about a fictional, upscale soul-food restaurant set in Atlanta that involves a family comprised of a father, his daughters and the sister-in-law of the deceased mother, whom the restaurant is named after.  [UF 111] The superficial similarity that both involve a show about a soul-food restaurant is not enough to prevail.  As explained in Section II above, Plaintiffs cannot demonstrate "substantial similarity" between both works.  [UF 113]  Thus, their implied contact claim fails as a matter of law.

d.  It is uncontroverted that Weinberger independently created "Belle's."

As explained above, Weinberger independently created *Belle's*. Independent creation is not only a defense to copyright infringement, but it also bars *Desny* claims.  *See Mann v. Columbia Pictures, Inc.*, 128 Cal.App.3d 628, 650 (1982); *Teich*, 170 Cal.App.2d at 804-805.

///

WEINBERGER'S MOTION FOR SUMMARY JUDGMENT

## V.  PLAINTIFFS' INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE CLAIM FAILS

The claim of interference with prospective business advantage requires: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002) (citing *Youst v. Longo*, 43 Cal.3d 64, 71 (1987)).  A plaintiff must further prove that "[d]efendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Hsu*, 211 F.R.D. at 620.  For causation, Plaintiffs must demonstrate that it was reasonably probable that economic advantage would have been realized but for defendant's interference.  *Youst*, 43 Cal.3d at 71.

           a.  <u>Plaintiffs did not have any existing economic relationships with third parties that were interfered with.</u>

                      *i.  Plaintiffs did not have any existing relationship with actors*

Plaintiffs did not have any existing relationship with Núñez to act in *Roscoe's Show*.  [UF 114]   Nor did Plaintiffs have any existing relationship with Keith David to act in *Roscoe's Show*.  [UF 115]

                      *ii.  Plaintiffs did not have any existing relationship with any networks*

Plaintiffs did not have any existing relationships with any networks; they were all prospective.  [UF 116]

///

///

///

iii.  *Plaintiffs did not have any existing relationships with showrunners*

Plaintiffs did not have any existing relationships with any showrunners; they were all prospective.  [UF 122]

      b.  Even if Plaintiffs could prove any existing relationships, Plaintiffs cannot prove that Weinberger knew of those existing relationships.

Weinberger was unaware of any existing relationships that Plaintiffs had with actors, networks or showrunners for *Roscoe's Show*.  [UF 125]

      c.  Plaintiffs cannot prove that Weinberger or Núñez knowingly interfered with any existing relationships.

         i.  *If, as Plaintiffs contend, Weinberger and Núñez were acting as Plaintiffs' agents, then Weinberger and Núñez cannot be held liable for interfering with their principal's relationships.*

According to Plaintiffs, Weinberger and Núñez were acting as agents for them.  [UF 126-127]  An agent of a principal cannot be held liable for interference as a matter of law because the agent is not a "stranger" to the relationship.  *See Mintz v. Blue Cross of California*, 172 Cal.App.4th 1594, 1607 (2009); *PM Group, Inc. v. Stewart*, 154 Cal.App.4th 55, 65 (2007).

         ii.  *Neither Weinberger and Núñez did anything to interfere with any relationships*

Plaintiffs are unable to prove that Weinberger and Núñez knew of any existing relationships (because, among other reasons, there were none) and intended to disrupt them.  *See Casey v. U.S. Bank Nat. Assn.*, 127 Cal.App.4th 1138, 1144 (2005) ("Liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted.")

///

///

///

1        d.  <u>Because all of their other claims fail, Plaintiffs cannot establish any</u>

2           <u>independently wrongful conduct.</u>

3        Weinberger's conduct was protected under the privilege of competition

4    because Herb Hudson decided early on that he did not like Weinberger and was not

5    going to work with him.  [UF 136]  Weinberger informed Plaintiffs that he did not

6    want to do or would not do *Roscoe's Show*.  [*Id*.]  Thereafter, all of Weinberger's

7    conduct in pursuing his own business interests was protected under the privilege of

8    competition. *See San Francisco Design Ctr. Associates v. Portman Companies*, 41

9    Cal.App.4th 29, 40-41 (1995); *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11

10   Cal.4th 376, 390-391 (1995).

11       In order to defeat the privilege, Plaintiffs must establish that the "defendant

12   not only knowingly interfered with the plaintiff's expectancy, but engaged in

13   conduct that was wrongful by some legal measure other than the fact of interference

14   itself." *New.Net, Inc. v. Lavasoft*, 356 F.Supp.2d 1090, 1114 (C.D. Cal. 2004)

15   (internal citations omitted). Stated differently, "[i]t is ... the plaintiff's burden to

16   prove, as an element of the cause of action itself, that the defendant's conduct was

17   independently wrongful." *Id*.

18       Because all of Plaintiffs' other claims fail for the reasons discussed above,

19   the interference claim must be dismissed for Plaintiffs' inability to prove

20   independently wrongful conduct.

21       e.  <u>Plaintiffs cannot demonstrate causation because TV One was offered</u>

22          <u>but rejected *Roscoe's Show* by an employee of Hi Point Studios.</u>

23       Norbert Pickett pitched *Roscoe's Show* to TV One in 2011 on behalf of

24   Plaintiffs.  [UF 130]  Hudson pitched *Roscoe's Show* to Cathy Hughes, the founder

25   and owner of TV One.  [UF 131]  Apparently, TV One rejected the idea for

26   *Roscoe's Show*, because nothing ever came of it.  More importantly, Weinberger

27   never prevented Plaintiffs from sending other representatives to TV One.

28       Plaintiffs had two shots at TV One and they failed.  Plaintiffs cannot –

1   without speculating – demonstrate that Weinberger or Núñez would have fared any

2   better.  Accordingly, Plaintiffs cannot demonstrate that it was reasonably probable

3   that economic advantage would have been realized but for any interference.  *See*

4   *Youst*, 43 Cal.3d at 71.

5   **VI.   GOODNESS CANNOT RECOVER STATUTORY DAMAGES OR**

6   **ATTORNEYS' FEES ON THE COPYRIGHT CLAIM**

7         Pursuant to Rule 56(g), the Court may "enter an order stating any material

8   fact--including an item of damages or other relief--that is not genuinely in dispute

9   and treating the fact as established in the case."  Fed. R. Civ. P. 56(g).  Section 412

10  of the Copyright Act states, in pertinent part, that a plaintiff may not recover an

11  award of statutory damages or attorneys fees "for any infringement of copyright in

12  unpublished work commenced before the effective date of its registration." 17

13  U.S.C. § 412.[13]  "Section 412 'leaves no room for discretion, mandating that no

14  attorney's fees or statutory damages be awarded so long as the infringement

15  commenced before registration of the copyright."  *Gerig v. Krause Publications,*

16  *Inc.*, 58 F.Supp.2d 1261, 1268 (D.Kan.1999).

17        According to Plaintiffs, the Roscoe Show Materials were completed in 2007

18  and then used to "market" the *Roscoe's Show* to third parties.  [UF 137]  Plaintiffs

19  admit that the alleged copyright infringement of the Roscoe Show Materials first

20  occurred in or around August 2011 when Weinberger and Núñez pitched *Belle's*

21  TV One and has been ongoing since then.  [UF 138]  Plaintiffs did not register the

22  Roscoe Show Materials with the Copyright Office until more than a year later on

23  September 11, 2012.  [UF 139]

24        Plaintiffs' admissions preclude statutory damages and attorneys' fees because

25  the allegedly infringing conduct purportedly commenced before registration.  Thus,

26

27        [13] 17 U.S.C. § 412 states in pertinent part:  "no award of statutory damages or
    of attorney's fees, as provided by sections 504 and 505, shall be made for--(1) any
28  infringement of copyright in an unpublished work commenced before the effective
    date of its registration."  17 U.S.C. § 412(1).

24

they are barred as a matter of law under 17 U.S.C. § 412.[14]  Because it cannot be genuinely disputed that Plaintiffs registered the Roscoe Show Materials too late to obtain statutory protections, the Court should enter an order stating that Goodness is not entitled to recover statutory damages or attorneys' fees.

## VII.  CONCLUSION

Weinberger respectfully requests that the Court enter summary judgment, or in the alternative, partial summary judgment on the issues identified.

JOHNSON & JOHNSON LLP

DATED:  September 23, 2013

By  /s/ James T. Ryan

James T. Ryan
Attorneys for Defendant,
Edwin B. "Ed." Weinberger

---

[14] *See*, *e.g.*, *William Hablinski Architecture v. Amir Construction, Inc*., 2004 WL 4909901, at *3 (C.D. Cal. 2004) (holding that defendant was entitled to summary adjudication on plaintiff's claim for statutory damages and attorney's fees and precluding plaintiff from seeking those amounts under the Copyright Act as a matter of law); *Wilson v. Brennan*, 666 F.Supp.2d 1242, 1264 (D.N.M. 2009) (noting that plaintiff could not recover statutory damages because plaintiff did not registered his work until nearly three years after the first infringing publication); *Oto Software, Inc. v. Highwall Technologies, LLC*, 2010 WL 3842434, *22 (D. Colo., Aug. 6, 2010, 08-CV-01897-PAB-CBS) *report and recommendation adopted*, (D. Colo., Sept. 27, 2010, 08-CV-01897-PAB-CBS) 2010 WL 3842430 (granting partial summary judgment because infringement occurred two years before registration).