1  Martin J. Barab (State Bar No. 47419)
2  A. Raymond Hamrick, III (State Bar No. 93821)
   Kenneth A. Kotarski (State Bar No. 100954)
   Rebecca L. Worden (State Bar No. 270464)
3  HAMRICK & EVANS, LLP
   111 Universal Hollywood Drive, Suite 2200
4  Universal City, California 91608
   Telephone No.: (818) 763-5292
5  Fax No.: (818) 763-2308

6  Attorneys for Plaintiffs
   GOODNESS FILMS, LLC, HERBERT HUDSON, PAUL
7  GOLDSBY, and KENNEDY GOLDSBY

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  GOODNESS FILMS, LLC, a California Limited Liability Company; HERBERT HUDSON, an individual; PAUL GOLDSBY, an individual; and KENNEDY GOLDSBY, an individual, | Case No.: CV 12-08688-GW (JEMx) |
| 12 13 | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT ED. WEINBERGER'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| 14             Plaintiffs, | |
| 15        v. | |
| 16  TV ONE, LLC, a Maryland Limited Liability Company; MIGUEL A. NUÑEZ, JR., an individual; and EDWIN B. "ED." WEINBERGER, an individual, | Complaint filed:   October 10, 2012 |
| 17 18             Defendants. | Date:        October 21, 2013 Time:        8:30 a.m. Courtroom:   10 |
| 19 20  AND RELATED THIRD-PARTY CLAIMS. | Trial Date:        December 17, 2013 |

21

22         Plaintiffs GOODNESS FILMS, LLC, ("Goodness Films"), HERBERT
23  HUDSON ("Herb Hudson"), PAUL GOLDSBY, and KENNEDY GOLDSBY
24  (collectively, "Plaintiffs"), hereby submit the following Memorandum of Points and
25  Authorities in Opposition to Defendant EDWIN B. "ED." WEINBERGER's Motion for
26  Summary Judgment or, in the Alternative, Partial Summary Judgment (the "Motion").
27  Docket No. 181.

28

HAMRICK & EVANS, LLP

# **TABLE OF CONTENTS**

Page

I.    SUMMARY OF ARGUMENT ................................................................. 1

II.   ARGUMENT ........................................................................................... 1

    A.    The Standards Governing Summary Judgment Motions............................ 1

    B.    Genuine Issues of Material Fact Exist as to Whether
      There is Substantial Similarity Between the Belle's
      Show and the Roscoe's Show.............................................................. 2

    C.    Independent Creation is not Properly Decided on
      Summary Judgment........................................................................... 2

    D.    Genuine Issues of Material Fact Exist as to Whether
      Núñez Acted as Plaintiffs' Agent ...................................................... 4

        1.    An Agency Agreement May be Implied................................... 4

        2.    Factors Determining Agency.................................................. 5

        3.    Genuine Issues of Material Fact Also Exist as to
            Whether the Roscoe's Show was Pitched to TV One
            Other Than as the Infringing Belle's Show by Núñez
            and Weinberger............................................................... 7

        4.    Whether TV One Would have Purchased the Roscoe's
            Show Cannot be Resolved on Summary Judgment................... 9

    E.    Genuine Issues of Material Fact Exist as to Whether
      Weinberger Aided and Abetted Núñez's Breach of
      Fiduciary Duty ................................................................................ 10

        1.    Weinberger had Knowledge of Núñez's Fiduciary Duty.............. 11

HAMRICK & EVANS, LLP

i

# TABLE OF CONTENTS

Page

2.    The Specific Allegations of the Complaint Sufficiently Plead Claims for Breach of Fiduciary Duty and Aiding and Abetting ........................................................ 12

F.    Genuine Issues of Material Fact Exist as to Weinberger's Liability for Breach of Implied Contract ................................. 13

1.    Weinberger and Núñez Impliedly Agreed to Compensate Plaintiffs if They Exploited the Roscoe's Show ........................... 14

2.    Industry Customs and Practice in the Submission of Ideas........... 15

3.    Núñez and Weinberger Admit Access, Undermining a Claim of Independent Creation.................................... 15

G.    Genuine Issues of Material Fact Exist as to Whether Weinberger and Núñez Interfered with Plaintiffs' Prospective Economic Advantage ........................................................ 16

1.    Plaintiffs' Existing and Potential Economic Relationships ........... 17

2.    Weinberger's Knowledge of Plaintiffs' Economic Relationships.................................................. 19

3.    Weinberger's Interference............................................. 20

4.    Plaintiffs Need Not Prove Independently Wrongful Conduct....... 21

H.    Plaintiffs are Permitted to Recover Both Statutory Damages and Attorneys' Fees on Their Copyright Claim against Weinberger....... 23

III.   CONSIDERATION OF DEFENDANTS' MOTIONS SHOULD BE DEFERRED ........................................................ 24

IV.   CONCLUSION ........................................................ 25

HAMRICK & EVANS, LLP

ii

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT ED. WEINBERGER'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

HAMRICK & EVANS, LLP

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ....................................................................... 24

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................... 10

*Apodaca v. Trinity Lumber Co.*,
   226 Cal.App.2d 1 (1964) ............................................................................... 16

*Binder v. Aetna Life Ins. Co.*,
   75 Cal.App.4th 832 (1999) ............................................................................ 15

*Blaustein v. Burton*,
   9 Cal.App.3d 161 (1970) ............................................................................... 15

*Borders Online, LLC v. State Bd. of Equalization*,
   129 Cal.App.4th 1179 (2005) ..................................................................... 4, 6

*Bowoto v. Chevron Texaco Corp.*,
   312 F.Supp.2d 1229 (N.D. Cal. 2004) ........................................................... 13

*British Airways Board v. Boeing Company*,
   585 F.2d 936 (9th Cir. 1978) ..................................................................... 1, 12

*Brookhaven Landscape & Grading Co., Inc. v. J.F. Barton Contracting Co.*,
   676 F.2d 516 (11th Cir. 1982) ....................................................................... 20

*Calderone v. United States*,
   799 F.2d 254 (6th Cir. 1986) ........................................................................... 1

*Clonus Assocs. v. DreamWorks, LLC*,
   457 F.Supp.2d 432 (S.D.N.Y. 2006) ............................................................... 3

*Colome v. State Athletic Comm'n*,
   47 Cal.App.4th 1444 (1996) .......................................................................... 21

Cornwell v. Electra Central Credit Union,
   439 F.3d 1018 (9th Cir. 2006) .............................................................. 7, 19, 23

*Derek Andrew, Inc. v. Proof Apparel Corp.*,
   528 F.3d 696 (9th Cir. 2008) ......................................................................... 23

Desert Palace, Inc. v. Costa,
   539 U.S. 90, 123 S.Ct. 2148 (2003) ...................................................... 7, 19, 23

iii

1

2                        **TABLE OF AUTHORITIES**

3                                                                    <u>Page</u>

4

5  *Fontenot v. Upjohn Co.,*
       780 F.2d 1190 (5th Cir. 1986) ............................................................... 2
6
   *Grosso v. Miramax Film Corp.,*
7      383 F.3d 965 (9th Cir. 2004) ................................................... 13, 14, 15

8  *Gund, Inc. v. Russ Berrie & Co.,*
       701 F.Supp. 1013 (S.D.N.Y. 1988) ...................................................... 3
9
   *Henry v. Daytop Village, Inc.,*
10     42 F.3d 89 (2nd Cir. 1994) .................................................................. 20

11  *Independent Enterprises, Inc. v. Pittsburgh Water & Sewer Authority,*
        103 F.3d 1165 (3rd Cir. 1997) .......................................................... 20
12
   *ING Bank, FSB v. Chang Seob Ahn,*
13      758 F.Supp.2d 936 (N.D. Cal. 2010) .................................................. 4

14  *Kamar Int'l, Inc. v. Russ Berrie & Co.,*
        657 F.2d 1059 (9th Cir. 1981) ............................................................ 3
15
   *Korea Supply Co. v. Lockheed Martin Corp.,*
16      29 Cal.4th 1134 (2003) ...................................................................... 17

17  *Kwan v. Schlein,*
        246 F.R.D. 447 (S.D.N.Y. 2007) ...................................................... 23
18
   *Mann v. Columbia Pictures, Inc.,*
19      128 Cal.App.3d 628 (1982) .......................................................... 15, 16

20  *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.,*
        182 F.3d 157 (2nd Cir. 1999) .............................................................. 2
21
   *Neilson v. Union Bank of California, N.A.,*
22      290 F.Supp.2d 1101 (C.D. Cal. 2003) .............................................. 12

23  *Overhill Farms, Inc. v. Lopez,*
        190 Cal.App.4th 1248 (2010) ............................................................ 22
24
   *Overman v. Loesser,*
25      205 F.2d 521 (9th Cir. 1953) .............................................................. 3

26  *Pacific Gas & Electric Co. v. Bear Stearns & Co.,*
        50 Cal.3d 1118 (1990) ...................................................................... 17
27
   *Ramona Manor Convalescent Hosp. v. Care Enters.,*
28      177 Cal.App.3d 1120 (1986) ............................................................ 20

HAMRICK & EVANS, LLP

iv

1

2

# **TABLE OF AUTHORITIES**

3

<u>Page</u>

4

5

*Repp v. Webber*,
    132 F.3d 882 (2d Cir. 1997)...............................................................................3

6

*Rokos v. Peck*,
    182 Cal.App.3d 604 (1986) .............................................................................13

7

8

*Roth v. Rhodes*,
    25 Cal.App.4th 530 (1994) ..............................................................................17

9

*San Francisco Design Center Associates v. Portman Companies*,
    41 Cal.App.4th 29 (1995) ................................................................................21

10

11

*Savage v. Pacific Gas & Elec. Co.*,
    21 Cal.App.4th 434 (1993) ..............................................................................20

12

*Show Management v. Hearst Pub. Co.*,
    196 Cal.App.2d 606 (1961) .............................................................................21

13

14

*Sobhani v. @Radical.Media Inc.*,
    257 F. Supp. 2d 1234 (C.D. Cal. 2003) ............................................................3

15

*Southern Calif. Gas Co. v. City of Santa Ana*,
    336 F.3d 885 (9th Cir. 2003) .............................................................................2

16

17

*Van't Rood v. County of Santa Clara*,
    113 Cal.App.4th 549 (2003) .........................................................................4, 6

18

*Wickham v. Southland Corp.*,
    168 Cal.App.3d 49 (1985) ...............................................................................10

19

20

*Youst v. Longo*,
    43 Cal.3d 64 (1987) ........................................................................................21

21

**Statutes**

22

17 USC § 106.......................................................................................................24

23

17 USC § 106(1)..................................................................................................24

24

17 USC § 106(3)..................................................................................................24

25

17 USC § 106(5)..................................................................................................24

26

17 USC § 412...............................................................................................23, 24

27

17 USC § 504.......................................................................................................23

28

HAMRICK & EVANS, LLP

1

## **TABLE OF AUTHORITIES**

<u>Page</u>

17 USC § 505.................................................................................... 23

*Federal Rules of Civil Procedure,* Rule 56(c) ........................................ 2, 16

**Other Authorities**

3 Witkin, *Summary of Cal. Law:*
*Agency & Employment* (10th ed. 2005) § 92, p. 139 ................................. 4

3 Witkin, *Summary of Cal. Law:*
*Agency & Employment,* § 93, p. 140 ...................................................... 4

Cal. Prac. Guide Civ. Pro. Trial Claims and Def.
Ch. 3(II)-B §3:174............................................................................ 19

Federal Rules: Defining Genuine Issues of Material Fact,
99 FRD 465, 487-488 (1984)............................................................... 2

*Nimmer on Copyright*
(2010) §12.10[B][2][b] ...................................................................... 3

*Nimmer on Copyright*
§ 12.11[D] ...................................................................................... 3

*Nimmer on Copyright*
§ I6.05[B], at 16-35 ......................................................................... 15

Restatement (Second) of Torts, § 876 ................................................. 12

HAMRICK & EVANS, LLP

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   SUMMARY OF ARGUMENT

An abundance of disputed material facts exist in this matter, each of which undermines and refutes Weinberger's purported entitlement to Summary Judgment. Taken together, these facts clearly compel denial of the subject Motion.   Indeed, genuine issues of material fact exist as to the following:

1.   Whether there is substantial similarity between the Belle's Show and the Roscoe's Show;

2.   Whether the Belle's Show was created independently of the Roscoe's Show;

3.   Whether Núñez acted as Plaintiffs' agent;

4.   Whether Weinberger aided and abetted Núñez's Breach of Fiduciary Duty;

5.   Weinberger's liability for Breach of Implied Contract

6.   Whether Weinberger and Núñez interfered with Plaintiffs' Prospective Economic Advantage; and

7.   Whether Plaintiffs are permitted to recover both statutory damages and attorneys' fees on their Copyright Claim against Weinberger.

## II.   ARGUMENT

### A.   The Standards Governing Summary Judgment Motions

The burden of establishing that there is no genuine issue of material fact lies initially with the moving party, and resolution of all doubts should be made in favor of the party opposing the motion.   *British Airways Board v. Boeing Company*, 585 F.2d 936, 951 (9th Cir. 1978).   The moving party must shoulder the initial burden of proof as to each material fact upon which it has the burden of persuasion at trial.

"*Where the moving party has the burden* – the plaintiff on a claim for relief or the defendant on an affirmative defense – *his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party*." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (emphasis in original),

HAMRICK & EVANS, LLP

1  quoting from Summary Judgment under the Federal Rules: Defining Genuine Issues of
2  Material Fact, 99 FRD 465, 487-488 (1984); *Southern Calif. Gas Co. v. City of Santa*
3  *Ana*, 336 F.3d 885, 888 (9th Cir. 2003) [citing text].

4         The moving party also must meet the ultimate burden in persuading the Court
5  that there is "no genuine issue as to any material fact and that the movant is entitled to
6  judgment as a matter of law." *FED. R. CIV. P.* 56(c).  "If the movant bears the burden of
7  proof on an issue, either because he is the plaintiff or as a defendant he is asserting an
8  affirmative defense, he must establish beyond peradventure *all* of the essential elements
9  of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780
10  F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "Because summary judgment is
11  a 'drastic device,' cutting off a party's right to present its case to a jury, the moving
12  party bears a 'heavy burden' of demonstrating the absence of any triable issues of
13  material fact." *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.,* 182 F.3d 157,
14  160 (2nd Cir. 1999).

**B.**     **Genuine Issues of Material Fact Exist as to Whether There is Substantial Similarity Between the Belle's Show and the Roscoe's Show**

18         In order to avoid a substantial repetition of the same arguments, Plaintiffs
19  incorporate by reference their Memorandum of Points and Authorities in Support of
20  Plaintiffs' Opposition to Defendant TV One, LLC's Motion for Summary Judgment as
21  it relates to the substantial similarity arguments made by Weinberger as if set forth at
22  length herein.

**C.**     **Independent Creation is not Properly Decided on Summary Judgment**

24         Weinberger argues that the Court should essentially disregard the substantial
25  similarity between the two works at issue because he "independently created" the
26  infringing Belle's Show (*after* being provided with the Roscoe's Show Materials, no
27  less).  Such argument is improper at the summary judgment phase and, in any event,
28  devoid of merit.

The question of independent creation arises only after a copyright Plaintiff has made a showing of substantial similarity between two works; at that point, the burden shifts to the Defendant to prove that his work was independently created. *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir. 1981). However, the question of whether similarity between two works "was the result of actual copying from Plaintiff or created independently of Plaintiff's work" is not proper for consideration on a Motion for Summary Judgment. Instead, the strength of a Defendant's "independent creation" defense is properly reserved as "a question for the fact finder." *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997); *See also Sobhani v. @Radical.Media Inc.*, 257 F. Supp. 2d 1234, 1237 (C.D. Cal. 2003) (denying defendants' request for summary judgment based on independent creation, where defendants' work was produced *after* plaintiffs and plaintiff presented evidence of access and substantial similarity); 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* (2010) §12.10[B][2][b] ("No matter how credible such a claim [for independent creation] is, and even absent any contrary evidence, a court should not grant summary judgment on that basis....To the extent that defendant denies that copying and maintains independent creation, a factual issue arises, which it is for trial to resolve.").

Moreover, the nature of independent creation strongly favors jury adjudication of this issue. California Courts have held that a Defendant must offer evidence of greater weight than merely the verbal testimony of interested witnesses in order to prove independent creation. *Overman v. Loesser*, 205 F.2d 521 (9th Cir. 1953). Moreover, where, as here, the Defendant's own uncorroborated testimony provides the sole evidence of independent creation, Defendant should be compelled to "testify as to his sources and subject himself to cross-examination." 4 *Nimmer on Copyright* § 12.11[D]; *See also*, *Clonus Assocs. v. DreamWorks, LLC*, 457 F.Supp.2d 432, 440 n.39 (S.D.N.Y. 2006); *Gund, Inc. v. Russ Berrie & Co.*, 701 F.Supp. 1013, 1023 (S.D.N.Y. 1988).

//

//

HAMRICK & EVANS, LLP

**D.   <u>Genuine Issues of Material Fact Exist as to Whether Núñez Acted as Plaintiffs' Agent</u>**

Summary Judgment must also be denied as to Plaintiffs' Claim for Relief for Breach of Fiduciary Duty because (1) Núñez admitted that he acted as agent for Plaintiffs, and (2) breached his fiduciary duties in connection with this agency by failing to submit the Roscoe's Show script to TV One, as promised, on Plaintiffs' behalf. Moreover, with respect to Weinberger's liability on Plaintiffs' Claim or Relief for aiding and abetting, based on the totality of the circumstances, Weinberger unquestionably knew of this agency and conspired with Núñez to breach the same, causing Plaintiffs to suffer substantial harm as a result of these deliberately wrongful acts.

**1.   <u>An Agency Agreement May be Implied</u>**

Notably, an agency agreement "may also be implied from the circumstances and conduct of the parties." 3 Witkin, *Summary of Cal. Law: Agency & Employment* (10th ed. 2005) § 92, p. 139; *See also Borders Online, LLC v. State Bd. of Equalization,* 129 Cal.App.4th 1179, 1189 (2005) ("An agency relationship 'may be implied based on conduct and circumstances.") (citation omitted). "The existence of agency or employment is mainly a question of fact." 3 Witkin, *Summary of Cal. Law: Agency & Employment*, § 93, p. 140; *See also ING Bank, FSB v. Chang Seob Ahn,* 758 F.Supp.2d 936, 941 (N.D. Cal. 2010) ("Agency is typically a question of fact[.]"); *Van't Rood v. County of Santa Clara,* 113 Cal.App.4th 549, 562 (2003) (same); *Borders Online, supra*, 129 Cal.App.4th at 1189 ("It is true that [t]he existence of an agency relationship is usually a question of fact, *unless the evidence is susceptible of but a single inference.")* (citation omitted) (emphasis in original).

Here, Plaintiffs contend an implied agency agreement was formed, based on the circumstances and conduct of the parties, when Núñez unequivocally advised Paul Goldsby, in writing, that he will submit the Roscoe's Show script to TV One on Plaintiffs' behalf. On August 24, 2010, pursuant to the fiduciary relationship between Plaintiffs and Núñez, Paul Goldsby directed an e-mail to Núñez, entitled "[R]oscoe's

4

HAMRICK & EVANS, LLP

[S]cript," instructing him to "Make it happen at [TV] [O]ne before bently [*sic*] [Kyle Evans] [g]ets a chance."  Deposition of Miguel A. Núñez, Jr. ("Núñez Depo."), at Exh. "D" to Declaration of A. Raymond Hamrick, III in Support of Plaintiffs' Oppositions to Defendants' Motions for Summary Judgment ("Hamrick Decl."), 158:7-159:2.  A copy of the Roscoe's Show script was attached to Paul Goldsby's e-mail to Núñez.  Núñez Depo. 158:15-21.  In response, Núñez e-mailed Paul Goldsby, "Will do." Núñez Depo. 162:13-16.

Accordingly, Núñez was specifically requested to act as Plaintiffs' agent in submitting the Roscoe's Show script to TV One, and consented, unequivocally, to do so. Núñez Depo. 158:7-159:2; 162:13-16.  Despite Núñez's unambiguous declaration to Paul Goldsby that he will submit the Roscoe's Show script to TV One, he knowingly and willfully failed to do so.  Significantly, it appears that Núñez intended to deceive Plaintiffs when he agreed to submit the script to TV One and then refused to do so. Indeed, Núñez admits that he did not tell any of the Plaintiffs that he would not submit the Roscoe's Show script to TV One "[b]ecause [he] wanted [Plaintiffs]to think that [he] was still ... helping them with it.   Núñez Depo. 159:16-160:16.  Moreover, Núñez brazenly admitted at his deposition that he was not honest with Plaintiffs in telling them that he failed to submit the Roscoe's Show script to TV One.  Núñez Depo. 160:21-161:6.  Based upon the above agency role, Núñez clearly breached his fiduciary duties as agent by exploiting his position of trust and confidence to misappropriate the Roscoe's Show Materials, including the Roscoe's Show script, and "create" the infringing Belle's Show, and exploit Plaintiffs' intellectual property for his own benefit.

### 2.   Factors Determining Agency

Weinberger correctly notes that "there is no bright-line" test to determine agency and that California Courts have considered the following four factors in deciding whether an agency relationship exists: (1) whether the agent has power to alter the legal relationships of the principal; (2) whether the agent acts as the fiduciary of the principal; (3) whether the principal can control the agent; and (4) whether the agent consents to act as

HAMRICK & EVANS, LLP

the principal's agent. *See Borders Online, LLC v. State Bd. of Equalization,* 129 Cal. App. 4th 1179, 1190-91 (2005). Notably, the analysis as to whether an agency relationship exists is context-specific, and trial courts are not required to apply each factor. *Id.*; *See also Van't Rood v. County of Santa Clara,* 113 Cal.App.4th 549, 571 (2003).

Here, three of the four factors noted in *Borders Online* clearly establish that Núñez was Plaintiffs' agent.[1] First, by advising Paul Goldsby in no uncertain terms that he will submit the Roscoe's Show script to TV One, Núñez unquestionably consented to act as Plaintiffs' agent, thereby satisfying the fourth factor. With respect to the second factor, whether the agent acts as the fiduciary of the principal, Núñez was unequivocal in his testimony that not only did he agree to submit the Roscoe's Show script to TV One, but that he continued to act as if he would, going so far as omitting to tell any of the Plaintiffs that he would not submit the Roscoe's Show script to TV One for the reason that he wanted Plaintiffs to believe that he was their agent and still helping them with the submission process. Núñez Depo. 159:16-160:16.

Third, that Plaintiffs could, and did, exercise control over Núñez as their agent is without dispute. As an initial matter, Paul Goldsby directed Núñez as to the specific task to be accomplished, i.e., submit the Roscoe's Show script to TV One, and Núñez assented. Núñez Depo. 158:7-159:2; 162:13-16. The direction given Núñez was time-specific ... submit the Roscoe's Show script to TV One immediately ("make it happen") and before someone else has the chance to do so. Núñez Depo. 158:7-159:2. These time-sensitive directives were acknowledged by Núñez who testified he understood that Bentley Kyle Evans, a director and producer, intended to submit the same script to TV

---

[1] "Authority to bind" is not required for the existence of an agency relationship. In fact, the cases are clear that authority to bind is not required, only authority to act on behalf of and for the benefit of the principal in initiating or altering legal relationships between the principal and third parties. E.g. *City of Los Angeles v. Sherwood*, 85 Cal.App.3d 347, 351 (1978) ("The chief characteristic of the agency is that of representation, the authority to act for and in the place of the principal for the purpose of bringing him or her into legal relations with third parties." (emphasis added)); *Garlock Sealing Technologies, LLC v. NAK Sealing Technologies Corp.*, 148 Cal.App.4th 937, 964 (2007) (an agent "holds a power to alter the legal relations between the principal and third persons" (emphasis added).

HAMRICK & EVANS, LLP

1   One.   Núñez Depo. 158:25-159:1.   Not only was Núñez told what to do, but the
2   immediacy of his task was abundantly clear.   Núñez Depo. 158:7-159:2.

3        Weinberger's contention that Núñez was not a fiduciary because Plaintiffs did
4   not trust him is blatantly disingenuous.   At best, this assertion is inaccurate; at worst it
5   is intentionally deceptive.   Paul Goldsby testified that he held Núñez in an inner circle
6   of confidence, and trusted Núñez until he betrayed that trust.   Deposition of Paul
7   Goldsby ("P. Goldsby Depo."), at Exh. "I" to Hamrick Decl., 139:12-24; 140:8-140:14;
8   140:24-141:2. Mr. Hudson, an extremely careful businessman who subscribes to a trust
9   no one, keep your friends close and your enemies closer, style of business, trusted
10  Núñez because his production company and Paul Goldsby trusted Núñez, and Mr.
11  Hudson trusted Paul Goldsby and his production company. Deposition of Herbert
12  Hudson  ("Hudson Depo."), at Exh. "J" to Hamrick Decl., 146:10-14; 150:22-151:1.
13  Indeed, Mr. Hudson had no reason to distrust Núñez. Hudson Depo. 146:15-17.
14  Moreover, whether or not any of the Plaintiffs trust Núñez at this time is wholly
15  irrelevant to the events which previously transpired.  Hudson Depo. 146:8-9.

16       **3.**   **Genuine Issues of Material Fact Also Exist as to Whether the**
17           **Roscoe's Show was Pitched to TV One Other Than as the**
18           **Infringing Belle's Show by Núñez and Weinberger**

19       Weinberger alleges that both Norbert Pickett and Herbert Hudson unsuccessfully
20  pitched the Roscoe's Show to TV One.   Weinberger Motion, pp. 15:25-16:4.
21  Unfortunately for Weinberger, the totality of the circumstances, including the actual
22  witness testimony, documents and circumstantial evidence is enough to defeat
23  Weinberger's self-serving assertion. *Cornwell v. Electra Central Credit Union*, 439
24  F.3d 1018, 1029–1030 (9th Cir. 2006); *See also Desert Palace, Inc. v. Costa*, 539 U.S.
25  90, 100, 123 S.Ct. 2148, 2154 (2003) (in civil litigation generally, circumstantial
26  evidence "may be more certain, satisfying and persuasive than direct evidence.").

27       Significantly, TV One's Toni Judkins testified that in or around September 2011,
28  Norbert Pickett pitched only a "talk show" and a "profile show."   Deposition of Toni

7

1    Judkins ("Judkins Depo."), at Exh. "F" to Hamrick Decl., 54:19-57-8.  Mr. Pickett did

2    *not* pitch the Roscoe's Show to TV One.   Judkins Depo.57:9-11; TV One e-mail

3    correspondence of various dates regarding discussions with Norbert Pickett, Exh. "P" to

4    Hamrick Decl., TVO 000628-660.

5      Nor did Mr. Hudson pitch the Roscoe's Show to TV One.  In this regard,

6    Weinberger relies on certain hearsay testimony of Frank Pinnock (Weinberger UF 92)

7    regarding meetings between Mr. Hudson and Cathy Hughes of TV One.  In point of

8    fact, Mr. Pinnock did not know why Ms. Hughes was at Hi Point Studios where these

9    meetings allegedly took place.  Deposition of Frank Pinnock ("Pinnock Depo."), at Exh.

10    "K" to Hamrick Decl., 151:21-152:1. Mr. Pinnock never attended a formal meeting

11    between Ms. Hughes and Mr. Hudson where the Roscoe's Show was discussed.

12    Pinnock Depo. 150:12-18. Weinberger's efforts to characterize the encounter in the Hi

13    Point Studios' parking lot between Ms. Hughes and Messrs. Hudson and Pinnock as a

14    pitch meeting, defies logic and is not supported by the facts.  What is characterized by

15    Weinberger as a pitch meeting was a chance encounter with Ms. Hughes that occurred

16    when Messrs. Hudson and Pinnock returned to Hi Point Studios from a vendor meeting.

17    Pinnock Depo. 150:19-151:9.

18      Mr. Pinnock describes the encounter with Ms. Hughes, not as a meeting, but as a

19    meet and greet, "chitchat," during the course of which the Roscoe's Show and Beyond

20    the Lens (a show that Mr. Pinnock completed with the intention of it going to TV One)

21    came up.  Pinnock Depo. 150:19-151:9; 154:22-156:13.  Indeed, Mr. Hudson was very

22    vague about the Roscoe's Show during this general discussion with Ms. Hughes. *Id.*

23    Notably, Mr. Pinnock has no further information as to whether Mr. Hudson and Ms.

24    Hughes ever again discussed the Roscoe's Show. Pinnock Depo. 156:20-157:3.  The

25    bottom-line is that there is no compelling evidence of a pitch of the Roscoe's Show.

26    Ms. Hughes simply expressed interest in the ideas, and there was no explicit rejection of

27    the Roscoe's Show.   Indeed, Ms. Hughes may very well have been interested in the

28

HAMRICK & EVANS, LLP

1   Roscoe's Show for TV One, but never got back to Plaintiffs, most likely because she
2   was on her way out, as of August 2011, as the head of TV One. Judkins Depo. 31:2-20.

**4.   Whether TV One Would have Purchased the Roscoe's Show Cannot be Resolved on Summary Judgment**

5   The issue of whether or not TV One would have purchased the Roscoe's Show is
6   also rife with genuine issues of material fact and is not suitable for resolution on
7   Summary Judgment.  As an initial matter, TV One purchased the Belle's Show, which is
8   in significant respects substantially similar to the Roscoe's Show.  In an event, scripted
9   television shows often evolve during the course of production, and perceived issues
10  with respect to the script for the Roscoe's Show and the focus of TV One's
11  programming easily would have been resolved during development and production.
12  Declaration of Mark Litwak, ¶ 16. Notably, this occurred with the Belle's Show where
13  entirely new scenes were inserted into the scripts for each episode to correct what TV
14  One perceived as a difference of opinion with Weinberger as to the pacing of the scripts
15  and some of the subject matters that were presented in the scripts. Judkins Depo. 98:16-
16  24; 104:14-18.  In short, Ms. Judkins wanted the pacing to be more upbeat and the
17  scripts to be funnier.  Judkins Depo. 99:8-10.

18  Moreover, the pitch materials for the four projects that Núñez and Weinberger
19  initially pitched to TV One included such non-family oriented topics as a wife-
20  swapping foursome, along with a character described as a gold digger, a connotation
21  that TV One believed to be inconsistent with its audience.  "Four Projects" pitch
22  materials, at Exh. Q to Azat Decl., ED000113 ("OTHER CHARACTERS:. HATTIE
23  (40s), the "seen-it-all" cynical cashier; MAURICE (30s), the high-strung chef;
24  and various CUSTOMERS, from the *wife-swapping foursome* to the
25  neighborhood philosopher." and "Elese is the stylish, self-absorbed prima donna
26  with ambitions that alter between a career in the music business and finding a rich
27  husband."). (Emphasis supplied.)  Nevertheless, the Belle's Show was purchased by TV
28  One.

HAMRICK & EVANS, LLP

9

1    Lastly, given that TV One was seeking to deliver real life and entertainment
2    programming from the African American point of view, and Roscoe's House of
3    Chicken and Waffles, the focus of the Roscoe's Show, is an iconic Southern California-
4    based soul food restaurant, which has gained worldwide fame and acclaim for both its
5    food and its atmosphere, the potential for the exploitation of a synergy between the
6    Roscoe's Show and TV One easily would have developed. *See*, generally, Declaration
7    of Mark Litwak, ¶ 15.

8    In ruling on a Motion for Summary Judgment, the Court is guided by the
9    principle that "[c]redibility determinations, the weighing of the evidence, and the
10   drawing of legitimate inferences from the facts are jury functions, not those of a
11   judge...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Further, the
12   determination of whether an agent has breached his fiduciary duty is generally a
13   question of fact for the jury.  *See Wickham v. Southland Corp.*, 168 Cal.App.3d 49, 55
14   (1985) ("[I]t is an elementary rule that the existence of agency is a factual question
15   within the province of the trier of fact whose determination may not be disturbed on
16   appeal if supported by substantial evidence . . . . Only when the essential facts are not in
17   conflict will an agency determination be made as a matter of law.") (citations omitted).

18   **E.    Genuine Issues of Material Fact Exist as to Whether Weinberger**
19   **Aided and Abetted Núñez's Breach of Fiduciary Duty**

20   Weinberger also seeks Summary Judgment on the ground that Plaintiffs cannot
21   establish an underlying fiduciary duty owed by Núñez, an assertion that is thoroughly
22   refuted in the immediately preceding section of this Opposition (II.D.) in which
23   Plaintiffs unequivocally show that genuine issues of material fact exist as to whether
24   Núñez owed to Plaintiffs, and breached, fiduciary obligations to make full disclosure to
25   Plaintiffs of all material matters, to deal fairly, justly, and honestly with Plaintiffs, to be
26   loyal to the interests of Plaintiffs, and to place Plaintiffs' interests before his own
27   interests with respect to approaching Núñez's connections at TV One, presenting the

28

HAMRICK & EVANS, LLP

project to TV One, and determining TV One's interest in assisting in the last stages of production of the Roscoe's Show and ultimately airing the series.

### 1.    Weinberger had Knowledge of Núñez's Fiduciary Duty

In addition, Weinberger maintains that Plaintiffs cannot establish that Weinberger had knowledge of their discussions with Núñez regarding the Roscoe's Show.  In connection with Weinberger's knowledge of Núñez's fiduciary duty, the evidence shows that when Núñez first contacted Weinberger regarding the Roscoe's Show, Weinberger was aware at that time, or became aware thereafter, that Núñez was acting as agent on behalf of the Roscoe's Producers in his efforts in connection with the Roscoe's Show.  P. Goldsby Depo. 97:9-18.

At a minimum, genuine issues of material fact exist as to whether Núñez advised Weinberger that Núñez had agreed to act as agent for Plaintiffs in presenting the Roscoe's Show to TV One, which preclude Summary Judgment.  As an initial matter, it defies logic and reason that Núñez would not have disclosed his fiduciary relationship and duties to Weinberger.  In any event, the evidence shows that as part of the oral agreement the *Roscoe's Show* producers had with Weinberger, Weinberger *and* Núñez were to take the *Roscoe's Show* to TV One.  P. Goldsby Depo. 97:9-18.  Thus, Weinberger unquestionably was aware that Núñez was asked by Plaintiffs, as he, too, was, to approach TV One with the Roscoe's Show.

This is also consistent with the several development meetings related to the Roscoe's Show that Weinberger attended, including in late 2011, at which Weinberger stated that he was frustrated with the rate of progress of production of the Roscoe's Show and Mr. Hudson's exercise of ultimate control over each step of development. So detailed was Weinberger's knowledge of Núñez's specific assignment to present the Roscoe's Show to TV One, that at one point during this meeting when Mr. Hudson stepped away from the table, Weinberger stated, in sum and substance, "We don't need Herb. *We* could take this to TV One ourselves, and I would write for free." (Emphasis supplied.)  P. Goldsby Depo. 97:9-18; Hudson Depo. 147:16-148:20.

11

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT ED. WEINBERGER'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

HAMRICK & EVANS, LLP

Plaintiffs need not prove that Weinberger owes them a duty before he can be held liable as an aider and abettor, a principle that Weinberger does not dispute. "California cases outlining the elements of aiding and abetting liability have consistently cited the elements of the tort as they are set forth in the Restatement (Second) of Torts, § 876, and have omitted any reference to an independent duty on the part of the aider and abettor. Under this formulation, liability may properly be imposed on one who knows that another's conduct constitutes a breach of duty and substantially assists or encourages the breach. [Citations.]" *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1133-34 (C.D. Cal. 2003).

## 2. The Specific Allegations of the Complaint Sufficiently Plead Claims for Breach of Fiduciary Duty and Aiding and Abetting

Weinberger's argument that he cannot be held liable for aiding and abetting Núñez on the basis of introductory *allegations* of the operative Complaint is equally unavailing. Weinberger Motion, p. 17:2-21. As the moving party, Weinberger bears the burden of establishing that there is no genuine issue of material fact. *British Airways Board v. Boeing Company, supra*, 585 F.2d at 951. Instead, rather than offering undisputed facts to meet this burden, Weinberger relies on the basic pleading allegations of agency (i.e., the acts of Defendants were within the course and scope of such agency) contained in Paragraph 11 of the Complaint.

Notably, however, Weinberger quotes only a selective portion of Paragraph 11 in an effort to bolster his myopic assertion. Indeed, Paragraph 11, which is based on information and belief, is qualified by the phrase, "that *unless otherwise specifically stated*, at all times mentioned herein, Defendants, and each of them, were the agents, employees, partners, joint venturers, owners, supervisors, principals, and/or employers of the remaining Defendants, and each of them, and were acting within the course and scope of that agency, partnership, employment, ownership, or joint venture with respect to the claims alleged herein." (Emphasis added.) Here, the specific allegations in the Paragraphs of the Complaint that follow this section (i.e., ¶¶ 26, 27, 33, 36, 38, 45 and

HAMRICK & EVANS, LLP

12

49) sufficiently plead a "manifestation by the principal that the agent shall act for him," the "agent's [acceptance of] the undertaking," and "an understanding between the parties that the principal is to be in control of the undertaking." *See Bowoto v. Chevron Texaco Corp.*, 312 F.Supp.2d 1229, 1239 (N.D. Cal. 2004).

F.   **Genuine Issues of Material Fact Exist as to Weinberger's Liability for Breach of Implied Contract**

Weinberger also erroneously contends that because Plaintiffs never explicitly offered to sell the Roscoe's Show to either him or to Núñez, they cannot be liable on a claim for Breach of Implied Contract.   Not only does this contention miss the fundamental basis for this claim, it misconstrues the relevant case law.  The contract at issue here is one that is implied by conduct, and not a classic *Desny* claim where, to establish liability, the Plaintiffs must "show that [they] prepared the work, disclosed the work to the offeree for sale, and did so under circumstances from which it could be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of the work." *Grosso v. Miramax Film Corp.,* 383 F.3d 965, 967 (9th Cir. 2004).

"[I]n California the device of the implied-in-fact contract is employed to protect the ideas of literary artists who, in the course of attempting to market their ideas, must necessarily disclose them to producers and publishers." *Rokos v. Peck*, 182 Cal.App.3d 604, 614 (1986). Here, Weinberger and Núñez were to use their talents and industry connections to help advance and market the Roscoe 's Show, including representing Plaintiffs to studios, connections, various industry insiders and anybody of significant potential ability to get the *Roscoe's Show* distribution.  Deposition of Kennedy Goldsby ("K. Goldsby Depo."), at Exh. "H" to Hamrick Decl., 133:4-25; P. Goldsby Depo. 97:9-18.  Notably, to form an implied-in-fact contract with Weinberger and Núñez, Plaintiffs were not required to offer to sell the entirety of the Roscoe's Show to them.   "[W]here an idea is furnished by one party to another, a contract sometimes may be implied even in the absence of an express promise to pay." *Grosso, supra*, 383 F.3d at 967 (internal

13

HAMRICK & EVANS, LLP

citation omitted).[2]  Accordingly, it is irrelevant whether Plaintiffs disclosed the idea for the Roscoe's Show to Weinberger and Núñez in the context of an offer for sale.

### 1.  Weinberger and Núñez Impliedly Agreed to Compensate Plaintiffs if They Exploited the Roscoe's Show

Here, it is contended that Weinberger and Núñez impliedly agreed that the Roscoe's Show Materials Plaintiffs shared with them would not be used unless Plaintiffs were compensated.  Indeed, the focus of the agreement was for Weinberger and Núñez to take the Roscoe's Show to TV One and/or other networks for sale or licensing.  P. Goldsby Depo. 97:9-18.  Further, when, as agreed, Weinberger and Núñez disclosed Plaintiffs' ideas to TV One, they impliedly agreed to credit Plaintiffs for any of Plaintiffs' ideas that might be used by TV One for any purpose, despite the absence of an express promise to pay.  *Grosso*, *supra*, 383 F.3d at 967 (internal citation omitted); Moreover, before Paul Goldsby provided Núñez and Weinberger with an oral summary of the Roscoe's Show or any of the Roscoe's Show Materials, it was understood and impliedly agreed that the Roscoe's Show concept would not be used or disclosed for any purpose unless Plaintiffs Mr. Hudson, Kennedy Goldsby and Paul Goldsby (collectively, the "Roscoe's Producers") were compensated. Declaration of Paul Goldsby in Support of Plaintiffs' Oppositions to Defendants' Motions for Summary Judgment ("P. Goldsby Decl."), ¶¶ 5-10 and 12-13.

Núñez and Weinberger always knew that the Roscoe's Show was Plaintiffs' production, and that it was not given to them as a gift.  Thus, Núñez and Weinberger always knew, or should have known, that they could not use the Roscoe's Show without crediting Plaintiffs or providing them with compensation for its use or disclosure.  For these reasons, genuine issues of material fact exist as to the establishment of the elements of a claim for Breach of Implied-in-Fact contract under California law.

---

[2]  Significantly, the Court already recognized these standards in the entertainment industry when it noted in its Order on Defendants' Motions to Dismiss the Second Amended Complaint that a contract may be implied even in the absence of an express promise to pay (Doc. 78, Page ID #:1234).

14

HAMRICK & EVANS, LLP

*Grosso, supra,* 383 F.3d at 967 ("[t]he Desny rule is justified on the theory that the bargain is not for the idea itself, but for the services of conveying that idea.").

Moreover, Weinberger's argument that Plaintiffs "blurted out" their idea for the Roscoe's Show for the purpose of entering into a business relationship with Weinberger is equally unavailing. Indeed, it is customary in the entertainment industry that when a producer gives a writer or potential co-producer a script to possibly retain the writer to perform writing services, or have the co-producer shop the project, the person (here, Weinberger and Núñez) will not disclose or share that script or its contents with third parties or convert it to their own use without the consent of the producer. Declaration of Mark Litwak, ¶ 12-14.

### 2. Industry Customs and Practice in the Submission of Ideas

Notably, California Courts acknowledge industry customs and practice in the submission of ideas. The "intention to make a promise may be manifested in language or by implication from other circumstances, including course of dealing or usage of trade or course of performance." *Binder v. Aetna Life Ins. Co.*, 75 Cal.App.4th 832, 850 (1999) (internal citation omitted); *See also Nimmer on Copyright* § 16.05[B], at 16-35. Specifically, applying an implied contract theory of recovery, California Courts impose an obligation to pay for the disclosure of an idea, which a party would otherwise be legally free to use, but which, in fact, he would not have come up with on his own, but for the disclosure. *Blaustein v. Burton*, 9 Cal.App.3d 161, 183 (1970).

### 3. Núñez and Weinberger Admit Access, Undermining a Claim of Independent Creation

Weinberger also asserts that it is uncontroverted that he independently created the Belle's Show and that such independent creation bars a *Desny* claim. Weinberger Motion, p. 20:23-27. In this regard, Weinberger cites *Mann v. Columbia Pictures, Inc.*, 128 Cal.App.3d 628 (1982) as purported support for the proposition that an "independent effort" on his part in developing the Belle's Show script provides him with a complete defense as to implied-in-fact claims. *Id.* at 650. However, the defense in

15

HAMRICK & EVANS, LLP

1  *Mann* was established because all inference of access and use claims were rebutted. *Id.*
2  The *Mann* Court reasoned that "a trial court can hold as a matter of law that an
3  inference has been dispelled where is has been rebutted by clear, positive and
4  uncontradicted evidence not open to doubt." *Id.* (citing *Apodaca v. Trinity Lumber Co.*,
5  226 Cal.App.2d 1, 4 (1964). In the *Mann* case, the inference was dispelled when the
6  defendants produced evidence that plaintiff's script "was never submitted to
7  [defendant], and neither access nor use existed." *Id.* In other words, the *Mann* Court
8  only found "independent effort" as a complete defense to a *Desny* claim where "[t]he
9  nonexistence of submission was established." *Id.* No such circumstances exist here as
10 both Núñez and Weinberger readily admit access to the relevant materials.

11      Weinberger alternatively argues that the Roscoe's Show and the Belle's Show are
12 not substantially similar.   Weinberger Motion, p. 20:1-22.   In this regard, Plaintiffs
13 incorporate by reference their Memorandum of Points and Authorities in Support of
14 Plaintiffs' Opposition to Defendant TV One, LLC's Motion for Summary Judgment as
15 if set forth at length herein.

### G.   Genuine Issues of Material Fact Exist as to Whether Weinberger and Núñez Interfered with Plaintiffs' Prospective Economic Advantage

18      The moving party on a Motion for Summary Judgment must meet the ultimate
19 burden in persuading the Court that there is "no genuine issue as to any material fact
20 and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).
21 If the moving party fails to do so, Summary Judgment must be denied.  Weinberger has
22 not met this burden with respect to the prospective economic advantage claim because
23 Plaintiff has set forth a genuine issue of material fact with respect to each element of
24 this Claim for Relief.

25      Plaintiffs' Claim for Relief for Interference with Prospective Business Advantage
26 requires (1) an economic relationship between the plaintiff and some third party, with
27 the probability of future economic benefit to plaintiff, (2) the defendant's knowledge of
28 the relationship (3) intentional acts on part of the defendant designed to disrupt the

16

HAMRICK & EVANS, LLP

relationship (4) actual disruption of the relationship, and (5) economic harm to plaintiff proximately caused by the acts of defendant. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153 (2003).

### 1. <u>Plaintiffs' Existing and Potential Economic Relationships</u>

First, genuine issues of material fact abound as to whether an economic relationship existed. Weinberger contends that Plaintiffs did not have any existing economic relationships with third parties to survive Summary Judgment. In support of his contention, Weinberger points only to the following potential third parties: actors (Núñez and Keith David), networks and showrunners. Weinberger Motion, pp. 21:16-22:4.

As to Núñez and Mr. David, Weinberger incorrectly asserts that a sufficient economic relationship does not exist because "Plaintiffs did not have any agreement" with them. Notably, Mr. David agreed to play the Sam character in the Roscoe's Show. P. Goldsby Depo. 99:21-100:17. Indeed, there is evidence that Paul Goldsby told Núñez, in the presence of Weinberger, that Mr. David was attached to the Roscoe's Show. P. Goldsby Depo. 240:8-241:17

Weinberger's purported argument relies on the incorrect assumption that a contractual agreement is required for this tort. However, case law is to the contrary; only "the existence of a business relationship" is required which "need not be a contractual relationship." *Roth v. Rhodes*, 25 Cal.App.4th 530, 546 (1994); *See also*, *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990) ("interference with prospective advantage does not require proof of a legally binding contract"); *See also*, *Korea Supply Co. v. Lockheed Martin Corp.*, *supra* (finding an "economic relationship" where there was a corresponding expectancy of probable future economic benefit from an existing relationship). Thus, a genuine issue of material fact exists as to whether Núñez and Mr. David had sufficient business relationships with Plaintiffs arising from their involvement with the Roscoe's Show.

Moreover, even if Weinberger's contention regarding the above-mentioned third

HAMRICK & EVANS, LLP

HAMRICK & EVANS, LLP

1    parties was correct, a sufficient economic relationship existed between Plaintiffs and
2    several other parties, including Ciarra Carter and Frank Pinnock, to establish a
3    sufficient basis for these interference claims. In or around 2009, Plaintiffs and Ms.
4    Carter entered into a business relationship in which Ms. Carter was cast to play Wanda
5    in the Roscoe's Show.  Declaration of Ciarra Carter (Doc. 25) ("Carter Decl."), pursuant
6    to Plaintiffs' Request for Judicial Notice, ¶ 6; Declaration of Paul Goldsby in Support
7    of Plaintiffs' Motion for Preliminary Injunction, at Exh. 13 to the Delcaration of James
8    T. Ryan ("Ryan Decl."), ¶¶ 17-18.  An economic relationship was also established with
9    Mr. Pinnock when he was hired to be the line producer, co-producer, and co-executive
10   producer of the Roscoe's Show. Declaration of Paul Goldsby in Support of Plaintiffs'
11   Motion for Preliminary Injunction, at Exh. "13" to Ryan Decl., ¶ 16; Declaration of
12   Frank Pinnock in Support of Plaintiffs' Motion for Preliminary Injunction, at Exh. "C"
13   to Hamrick Decl., ¶¶ 5, 8-10.

14   Further, Plaintiffs reached an agreement with Bentley Kyle Evans whereby if he
15   was the writer, "then he would become an executive producer" of the Roscoes' Show.
16   P. Goldsby Depo. 85:17-23.  In addition, Mr. Evans would be the show runner for the
17   Roscoe's Show.  P. Goldsby Depo. 84:19-85:3; 89:21-90:3.  Plaintiffs also planned to
18   use multiple directors for the Roscoe's Show, and had established relationships for the
19   Roscoe's Show with directors Aaron McGruder and Yvette Lee Bowser, among others,
20   including Kennedy Goldsby. P. Goldsby Depo. 146:17-147:16.  Plaintiffs had oral
21   agreements with crew members (P. Goldsby Depo. 71:20-23) and with set designers for
22   the Roscoe's Show. P. Goldsby Depo. 151:2-19. And, Plaintiffs had agreements with
23   directors of photography for the Roscoe's Show. P. Goldsby Depo. 145:5-10.

24   Moreover, Plaintiffs also had a potential economic relationship with the Adult
25   Swim cable network through Aaron McGruder whose company had a production deal
26   with Adult Swim.  Notably, Mr. McGruder contacted the president of Adult Swim and
27   obtained his agreement to include within his production agreement an order of twenty-
28   six (26) episodes for the Roscoe's Show.  P. Goldsby Depo. 117:17-118:18.  These

relationships carried with them the probability of future economic benefit to Plaintiffs arising from the exploitation of the Roscoe's Show. At a minimum, genuine issues of material fact exist as to whether economic relationships existed as to which Weinberger and Núñez interfered. *Id.*

### 2.  Weinberger's Knowledge of Plaintiffs' Economic Relationships

Second, genuine issues of material fact exist as to whether Weinberger knew of the existing relationships. In support of his claim that he was not aware of any existing relationships Plaintiffs had with actors, networks or showrunners for the Roscoe's Show, Weinberger merely states that at the one meeting with Plaintiffs, and no one mentioned any relationships that were in place. Weinberger Decl., ¶ 29.  However, such a claim does not preclude Weinberger from ever gaining the requisite knowledge of the relationships. Cal. Prac. Guide Civ. Pro. Trial Claims and Def. Ch. 3(II)-B §3:174 ("Defendant must (*or should*) have known of the economic relationship between plaintiff and third party").  (Emphasis supplied.)

Notably, facts exist which, although not raised by Weinberger, show there is, at the very least, a triable issue of fact as to whether Weinberger knew or should have known of these existing relationships.  *See Cornwell v. Electra Central Credit Union*, *supra*, 439 F.3d at 1029–1030 (circumstantial evidence alone may create a genuine issue of material fact); *See also Desert Palace, Inc. v. Costa*, 539 U.S. at 100, 123 S.Ct. at 2154.  For instance, Paul Goldsby told Núñez, in the presence of Weinberger, that Mr. David was attached to the Roscoe's Show.  P. Goldsby Depo., pp. 240:8-241:17.  In addition, in 2010, after active casting had taken place for the Roscoe's Show, Weinberger, and others, was present at several meetings that Mr. Pinnock attended in his co-producer capacity.  Declaration of Frank Pinnock in Support of Plaintiffs' Motion for Preliminary Injunction, at Exh. "C" to Hamrick Decl., ¶¶ 11-14.  Therefore, genuine issues of material fact exist as to whether Weinberger knew or should have known these relationships existed.

HAMRICK & EVANS, LLP

19

### 3.  __Weinberger's Interference__

There also exist genuine issues of material fact regarding whether Weinberger knowingly interfered with several of Plaintiffs' economic relationships.  *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal.App.3d 1120, 1130-31 (1986). In this regard, a Court may infer intent to interfere from a Defendant's intentional performance of an act substantially certain to result in interference.  *Savage v. Pacific Gas & Elec. Co.*, 21 Cal.App.4th 434, 449 (1993).

Weinberger asserts that if, as Plaintiffs contend, Weinberger and Núñez were acting as Plaintiffs' agents, then Weinberger and Núñez cannot be held liable for interfering with their principal's relationships.   Weinberger Motion, p. 22:11-18. Weinberger's position is premised on Plaintiff's allegations that Weinberger and Núñez were acting as agents for them, and that an agent of a principal cannot be held liable for interference as a matter of law because the agent is not a "stranger" to the relationship.[3] However, a Plaintiff may set forth as many separate claims "as it has regardless of consistency." *Independent Enterprises, Inc. v. Pittsburgh Water & Sewer Authority*, 103 F.3d 1165, 1175 (3rd Cir. 1997); *Brookhaven Landscape & Grading Co., Inc. v. J.F. Barton Contracting Co.*, 676 F.2d 516, 523 (11th Cir. 1982). Indeed, Plaintiffs may plead two or more inconsistent statements of a claim, even with the same count. *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2nd Cir. 1994).  Thus, assuming for the sake of argument that, as Weinberger contends, Weinberger and Núñez were *not* acting as agents for Plaintiffs, there remain genuine issues of material fact regarding whether or not Weinberger and Núñez knowingly interfered with Plaintiffs' economic relationships and their prospective economic advantage.

_____

[3] Notably, the two cases Weinberger cites for this proposition, *Mintz v. Blue Cross of California*, 172 Cal.App.4th 1594, 1607 (2009) and *PM Group, Inc. v. Stewart*, 154 Cal.App.4th 55, 65 (2007), involve claims of intentional interference *with contract* - not interference with prospective economic advantage.

20

HAMRICK & EVANS, LLP

### 4.   <u>Plaintiffs Need Not Prove Independently Wrongful Conduct</u>

Genuine issues of material fact are also present regarding whether Plaintiffs established that Weinberger engaged in any independently wrongful conduct, thereby skirting protection, if any, under the privilege of competition. Notably, application of the privilege requires that the "actor [Weinberger] does not employ wrongful means" in causing a third person not to enter into a prospective contractual relation with another who is his competitor.   *San Francisco Design Center Associates v. Portman Companies*, 41 Cal.App.4th 29, 40 (1995) dismissed, remanded and ordered published. Further, the competitive privilege is inapplicable to interference with an existing contract.  *See, Show Management v. Hearst Pub. Co.*, 196 Cal.App.2d 606, 618 (1961).

Here, the merit of Weinberger's contention regarding independently wrongful conduct is wholly reliant on the failure of each of Plaintiffs' other claims.  That is, Weinberger must prevail on Summary Judgment as to each of Plaintiffs' Claims for Relief in order to obtain the benefits of the privilege of competition.  For each of the reasons discussed above, there are myriad genuine issues of material fact that preclude Summary Judgment.   Therefore, Plaintiffs need not prove independently wrongful conduct.

Finally, genuine issues of material fact exist as to whether it was reasonably probable that economic advantage would have been realized but for any interference. *Youst v. Longo*, 43 Cal.3d 64, 71 (1987).  This element is met where there is foreseeable harm to the plaintiff caused or to be caused by the interference. *Colome v. State Athletic Comm'n*, 47 Cal.App.4th 1444, 1459 (1996).   In any event, a triable issue of fact may exist even in the absence of causation.  "[I]n the absence of other evidence, timing alone may be sufficient to prove causation…. Thus, … the real issue is whether, in the circumstances of the case, the proximity of the alleged cause and effect tends to demonstrate some relevant connection.  If it does, then the issue is one for the fact finder to decide." *Overhill Farms, Inc. v. Lopez*, 190 Cal.App.4th 1248, 1267 (2010) (Original emphasis.)

HAMRICK & EVANS, LLP

The "connection" here is obvious. Weinberger engaged in the production of, produced, exploited, broadcasted, exhibited and distributed the Belle's Show, which is based on and adapted from Plaintiffs' television series.  Weinberger used the theme, plot, ideas, concepts, characters and situations embodied in the Roscoe's Show and deliberately adapted, imitated, plagiarized and misappropriated integral portions of the Roscoe's Show to create the Belle's Show.  Plaintiffs potential relationships with other networks likewise were fractured once the strikingly similar Belle's Show was broadcast.   Moreover, absent Weinberger's interference, there was a reasonable probability that Plaintiffs would have realized an economic advantage from their many economic relationships.  P. Goldsby Depo. 71:20-23; 84:19-85:3; 85:17-23; 89:21-90:3; 99:21-100:17; 145:5-10; 146:17-147:16; 151:2-19; 240:8-241:17.

As addressed previously in Section II.D. above, the assertion that Plaintiffs twice pitched the Roscoe's Show to TV One and were turned down is nothing but a red herring.  Even if these two instances were pitches (which they were not), the fact that TV One gave Plaintiffs a chance to pitch their show, but failed, does not undermine causation. Indeed, a failed pitch to TV One is but one avenue, and a failure on the part of TV One to pick up the Roscoe's Show is not conclusive proof that another network would have acted in a like fashion.

Here, Weinberger's independently wrongful conduct interfered with Plaintiffs' relations with a defined group within the entertainment industry that was misled into believing, and acting thereon, that TV One was creating and releasing an original work when, in fact, the Belle's Show was developed based on Plaintiffs' ideas, concepts and written materials for the Roscoe's Show, but presented and held out to third parties as the Belle's Show without providing credit or compensation to Plaintiffs. As previously noted, circumstantial evidence of interference, alone, may create a genuine issue of material fact, sufficient to defeat Weinberger's Motion for Summary Judgment. *Cornwell v. Electra Central Credit Union*, *supra*, 439 F.3d at 1029; *See also Desert Palace, Inc. v. Costa*, *supra*, 539 U.S. at 100, 123 S.Ct. at 2154.  At a minimum,

22

HAMRICK & EVANS, LLP

genuine issues of material fact exist as to whether (1) Plaintiffs had existing economic relationships with third parties that were interfered with; (2) Weinberger knew of these existing relationships; (3) Weinberger or Núñez knowingly interfered with any existing relationships; (4) Plaintiffs can show causation.

**H.** **Plaintiffs are Permitted to Recover Both Statutory Damages and Attorneys' Fees on Their Copyright Claim Against Weinberger**

A successful Plaintiff in a copyright infringement case is entitled, at the Plaintiff's election to either (1) its actual damages and any additional profits of the infringer, or (2) statutory damages. 17 USC § 504. Additionally, the Court may award a prevailing Plaintiff its reasonable attorneys' fees as part of its costs. 17 USC § 505. However, admittedly these statutory measures of damages are not available where the "infringement of copyright in an unpublished work commenced before the effective date of its registration." 17 USC § 412. Weinberger alleges that Plaintiffs are not entitled to recover statutory damages because the Defendants' first acts of infringement took place before the September 11, 2012, registration of the Roscoe's Show Materials. However, due to the two distinct types of infringement at issue here—namely development of the infringing work, and broadcasting of the infringing work—Defendants' argument must fail.

With regard to ongoing infringement of a work, the Ninth Circuit has held that "the first act of infringement in a series of ongoing infringements *of the same kind* marks the commencement of one continuing infringement under § 412." *Derek Andrew, Inc. v. Proof Apparel Corp.*, 528 F.3d 696, 700-01 (9th Cir. 2008) (emphasis added). However, where the facts establish a later infringement of a different "*kind*," a plaintiff may still be permitted to recover statutory attorneys fees and damages. *E.g. Kwan v. Schlein,* 246 F.R.D. 447, 452 (S.D.N.Y. 2007) (permitting plaintiff to pursue statutory damages and attorney fees on grounds that publication of a new edition of the infringed work constituted commencement of a new act of infringement). It is well settled that infringement occurs where a Defendant violates any one of the exclusive rights of a

HAMRICK & EVANS, LLP

copyright holder pursuant to 17 USC § 106. *E.g. A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001). Where, as here, a party engages in conduct which violates different rights under section 106 at different times, these violations should be treated a different "kinds" of infringement for the purposes

Defendants' initial act of infringement—the unlawful <u>reproduction</u> of the Roscoe's Show and the passing-off of this work as Defendants' own—took place prior to the formal registration of the Roscoe's Show Materials. 17 USC § 106(1). However, subsequent to Plaintiffs' registration of the work, Defendants committed a different ***kind*** of infringement by <u>broadcasting and distributing</u> the substantially similar Belle's Show on the TV One network. 17 USC § 106(3), (5). The latter infringement did not commence until after registration of the Roscoe's Show Materials, therefore the limiting language of 17 USC § 412 is inapplicable here, and Plaintiffs are permitted to pursue statutory damages and attorneys' fees.

## III.   <u>CONSIDERATION OF DEFENDANTS' MOTIONS SHOULD BE DEFERRED</u>

In the event that the Court is inclined to grant any portion of Defendants' Motions for Summary Judgment or Partial Summary Judgment, Plaintiffs respectfully request that the Court defer considering the Motions, or deny them, pursuant to *Federal Rules of Civil Procedure* 56(d), until Plaintiffs obtain the discovery sought pursuant to their Motion to Modify Scheduling Order (Doc. 156).  Hamrick Decl. ¶¶ 19-23.

//

//

//

//

//

//

//

HAMRICK & EVANS, LLP

## IV.  <u>CONCLUSION</u>

For all of the forgoing reasons, Plaintiffs respectfully request that the Court issue an Order denying Weinberger's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment with prejudice.

Respectfully submitted,

DATED:  September 30, 2013

HAMRICK & EVANS, LLP

*/s/ A. Raymond Hamrick, III*

By:_____
MARTIN J. BARAB
A. RAYMOND HAMRICK, III
KENNETH A. KOTARSKI
REBECCA L. WORDEN
Attorneys for Plaintiffs
GOODNESS FILMS, LLC, HERBERT
HUDSON, PAUL GOLDSBY, and
KENNEDY GOLDSBY

HAMRICK & EVANS, LLP